2020 IL App (1st) 171992-U

No. 1-17-1992

Order filed December 30, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 12 1247418 |
| | ) | |
| KEVIN SROGA, | ) | Honorable |
| | ) | Diann K. Marsalek, |
| Petitioner-Appellant. | ) | Judge presiding. |

_____

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Howse and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Where section 4-104(a)(4) of the Illinois Vehicle Code (625 ILCS 5/4-104(a)(4) (West 2012)) does not contain the same elements as section 3-703 of the Illinois Vehicle Code (625 ILCS 5/3-703 (West 2012)), section 4-104(a)(4) does not violate the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11).

¶ 2     Years after petitioner Kevin Sroga was convicted and sentenced to 12 months' probation

for violating section 4-104(a)(4) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/4-

104(a)(4) (West 2012)) by affixing to his vehicle a license plate not registered for use on the vehicle, he filed a section 2-1401 petition challenging his conviction and sentence. Upon the State's motion, the circuit court dismissed his petition. Sroga now appeals that dismissal and contends that section 4-104(a)(4) violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), where the offense contains the same elements as an offense described in section 3-703 of the Vehicle Code (625 ILCS 5/3-703 (West 2012)), but is punished more severely. For the reasons that follow, we affirm the circuit court's dismissal.

¶ 3                                    I. BACKGROUND

¶ 4      The State charged Sroga with a Class A misdemeanor for possession of unauthorized registration on a vehicle for affixing to his vehicle a license plate not registered for use on the vehicle in violation of section 4-104(a)(4) of the Vehicle Code (625 ILCS 5/4-104(a)(4) (West 2012)). Sroga's case proceeded to a jury trial, where the State's evidence showed that, in October 2012, a Chicago police officer observed an unoccupied Ford Crown Victoria parked on the sidewalk. While writing a citation for the parking infraction, the officer ran the vehicle's license plate through a police database and learned that the license plate affixed to the vehicle was registered to another vehicle, which Sroga owned. A short time later, Sroga appeared and attempted to move the Ford, which he also owned. The officer informed Sroga that his license plate was not registered to the Ford to which Sroga responded "you got me on the plates." The jury found Sroga guilty of the offense. Thereafter, he filed an unsuccessful motion for new trial, and on October 6, 2014, the trial court sentenced him to 12 months' probation. Sroga did not appeal his conviction or sentence.

¶ 5      On October 6, 2016, Sroga filed a *pro se* petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)) and requested

that his conviction and sentence be vacated. He argued that he had a possessory right to the license plate on the Ford and suggested that his conduct would have been more appropriately charged as a violation of section 3-703 of the Vehicle Code (625 ILCS 5/3-703 (West 2012)) for improper use of evidence of registration. In response, the State filed a motion to dismiss, contending that his petition failed to show he was entitled to relief and was also barred by *res judicata*. Ultimately, the circuit court granted the State's motion to dismiss, finding that *res judicata* barred the relief Sroga sought because he had raised the same arguments in his posttrial motion for new trial.

¶ 6    This appeal followed.

¶ 7                                    II. ANALYSIS

¶ 8    Sroga contends that section 4-104(a)(4) of the Vehicle Code (625 ILCS 5/4-104(a)(4) (West 2012)), which is punishable as a Class A misdemeanor, violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) because the identical conduct also constitutes a violation of section 3-703 of the Vehicle Code (625 ILCS 5/3-703 (West 2012)), which is punishable only as a Class C misdemeanor.

¶ 9                      A. Procedural Default and Mootness

¶ 10    At the outset, we must address two issues that could potentially preclude us from reaching the merits of Sroga's challenge under the proportionate penalties clause. First, Sroga raised his specific claim of a violation of the proportionate penalties clause for the first time on appeal from the dismissal of his section 2-1401 petition. Generally, the normal rules that require preservation of error would prevent us from reviewing his claim. See *People v. Thompson*, 2015 IL 118151, ¶ 39. But if section 4-104(a)(4) violates the proportionate penalties clause, then it is void *ab initio* (*People v. Guevara*, 216 Ill. 2d 533, 542 (2005)), meaning "that the statute was constitutionally infirm from the moment of its enactment and, therefore, unenforceable." *Thompson*, 2015 IL

118151, ¶ 32. As such, Sroga may attack the allegedly unconstitutional statute at any time in any court, either collaterally or directly. *People v. Davis*, 2014 IL 115595, ¶ 26; see *People v. Ligon*, 2016 IL 118023, ¶ 9 ("Voidness challenges stemming from the unconstitutionality of a criminal statute under the proportionate penalties clause may be raised at any time."). Thus, the fact that Sroga raised his proportionate penalties challenge for the first time on appeal does not preclude us from reviewing his challenge.

¶ 11    Relatedly, because Sroga brought his challenge in a section 2-1401 petition, under the normal rules governing such petitions, he was required to file his petition within two years after the entry of the order of judgment, to present a meritorious defense and to show diligence in presenting the court with that defense. *People v. Vincent*, 226 Ill. 2d 1, 7 (2007). Given the circumstances of this case, it is arguable that Sroga did not act diligently in presenting his petition. However, the normal requirement of diligence in presenting a section 2-1401 petition does not preclude us from reviewing his challenge because his claim is that section 4-104(a)(4) violates the proportionate penalties clause and thus is void *ab initio.* See *Thompson*, 2015 IL 118151, ¶ 32; *Guevara*, 216 Ill. 2d at 542.

¶ 12    The second issue we must consider before addressing the merits of Sroga's proportionate penalties challenge is whether his challenge is moot, as the State argues. "A case is moot if the issues involved in the trial court have ceased to exist because intervening events have made it impossible for the reviewing court to grant effectual relief to the complaining party." *People v. Roberson*, 212 Ill. 2d 430, 435 (2004). Where an appeal involves the propriety of a sentence, the appeal is generally moot where the individual has served his sentence. *In re Shelby R.*, 2013 IL 114994, ¶ 15.

¶ 13 The State argues that, if section 4-104(a)(4) were to violate the proportionate penalties clause, the proper remedy would be to reduce Sroga's conviction from a Class A misdemeanor to a Class C misdemeanor consistent with section 3-703. And in doing so, under normal circumstances, the State asserts that the case would be remanded to the trial court for resentencing. Yet, according to the State, because Sroga has already served the greater Class A misdemeanor sentence of 12 months' probation, which was imposed more than six years ago, his substantive claim is moot and we cannot provide any real relief to him.

¶ 14 Sroga, however, argues that, if section 4-104(a)(4) were to violate the proportionate penalties clause, the proper remedy would be to reverse his conviction. Sroga posits that, when an amended sentencing statute has been found to violate the proportionate penalties clause, the proper remedy is a remand for resentencing consistent with the pre-amended version of the statute. Sroga, though, asserts that no prior version of section 4-104(a)(4) has ever had a constitutionally proportionate sentence and thus no constitutional sentence ever existed for the offense. Sroga therefore claims that the State never had the authority to charge him with an offense for violating section 4-104(a)(4) and thus reversal is the only appropriate remedy.

¶ 15 Although the parties disagree about the ultimate remedy if we were to find that section 4-104(a)(4) violates the proportionate penalties clause, both nevertheless agree that Sroga would have been convicted of a Class A misdemeanor—the most severe misdemeanor—improperly. See 730 ILCS 5/5-4.5-55 to 5-4.5-65 (West 2012). In other words, a successful proportionate penalties challenge by Sroga would at the very least result in his conviction being reduced from a Class A misdemeanor to a Class C misdemeanor, consistent with the comparator statute of section 3-703. That is potentially real relief to him and therefore, we find this appeal is not moot. See *People v. Yaworski*, 2014 IL App (2d) 130327, ¶ 4 (rejecting the State's mootness argument and addressing

the merits of a defendant's appeal where, although the defendant had already "fully served his sentence[,] *** [f]urther postconviction proceedings could conceivably result in reduction of the degree of the offense").

¶ 16                                    B. The Proportionate Penalties Clause

¶ 17     The proportionate penalties clause of the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. In analyzing a constitutional challenge under the clause, we must determine whether our legislature has set a sentence consistent with the gravity of the offense. *Ligon*, 2016 IL 118023, ¶ 10. One way a sentence can violate the clause is where a sentence "is greater than the sentence for an offense with identical elements." *Id.* "If the legislature determines that the exact same elements merit two different penalties, then one of these penalties has not been set in accordance with the seriousness of the offense." *People v. Sharpe*, 216 Ill. 2d 481, 522 (2005). The expectation that identical conduct will result in identical penalties comports with logic and common sense, and where it does not, "the penalties [are] unconstitutionally disproportionate and the greater penalty [cannot] stand." *Ligon*, 2016 IL 118023, ¶ 11. The constitutionality of a statute presents a question of law, which we review *de novo*. *Id.*

¶ 18     This case causes us to interpret two statutes, specifically section 3-703 and section 4-104(a)(4) of the Vehicle Code (625 ILCS 5/3-703, 4-104(a)(4) (West 2012)), and determine whether they contain identical elements. When we interpret a statute, our primary objective to determine and give effect to the intent of our legislature. *People v. Clark*, 2019 IL 122891, ¶ 18. "The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning." *Id.* ¶ 20. Where the statutory language is clear and unambiguous, we must

apply the statute as written and cannot resort to extrinsic aids of statutory construction. *People v. Perry*, 224 Ill. 2d 312, 323 (2007). However, where the statutory language is unclear and ambiguous, we may resort to extrinsic aids of statutory construction. *People v. Boyce*, 2015 IL 117108, ¶ 22. One fundamental principle of statutory construction is that "[w]ords and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute." *People v. Santiago*, 236 Ill. 2d 417, 428 (2010). "It is well established that, by employing certain language in one instance, and entirely different language in another, the legislature indicated that different results were intended." *People v. Ousley*, 235 Ill. 2d 299, 313-14 (2009).

¶ 19    For instance, in *In re K.C.*, 186 Ill. 2d 542, 545 (1999), our supreme court was tasked with determining whether two provisions of the Vehicle Code prohibiting trespass to a vehicle were absolute liability offenses. Neither section contained an explicit culpable mental state and in determining whether one should be implied, the court compared the provisions to a similar provision in the Criminal Code of 1961 that also prohibited trespass to a vehicle. *Id.* at 549. In doing so, the court observed that the trespass statute found in the Criminal Code of 1961 contained the culpable mental state of knowledge whereas the trespass provisions found in the Vehicle Code did not. *Id.* at 549-50. The court found the inclusion of a culpable mental state in the Criminal Code of 1961 and exclusion of one in the Vehicle Code indicative of a legislative intent that no culpable mental state should be implied in the trespass provisions of the Vehicle Code. *Id.* at 550. To find otherwise, according to our supreme court, would render the mental state of knowledge in the trespass provision of the Criminal Code of 1961 " 'meaningless surplusage.' " *Id.*

¶ 20                         C. The Statutes At Issue

¶ 21 With these principles of statutory construction in mind, we turn to the two statutes at issue in this appeal, which are both found in different chapters of the Vehicle Code. The first statute at issue is section 4-104(a)(4) (625 ILCS 5/4-104(a)(4) (West 2012)), under which defendant was charged and convicted. The provision makes it unlawful for:

> "[a] person to display or affix to a vehicle any certificate of title, manufacturers statement of origin, salvage certificate, junking certificate, display certificate, temporary registration permit, registration card, license plate or registration sticker not authorized by law for use on such vehicle."

*Id.* A first violation is considered a Class A misdemeanor (625 ILCS 5/4-104(b)(3) (West 2012)), which is punishable by a sentence of imprisonment of up to 364 days and a fine not to exceed $2500. 730 ILCS 5/5-4.5-55(a), (e) (West 2012). Meanwhile, section 3-703 (625 ILCS 5/3-703 (West 2012)) contains various prohibitions related to evidence of vehicle registration and certificates of title. Pertinent to this appeal, section 3-703 provides in part that:

> "nor shall any person display upon a vehicle any registration card, registration sticker or digital registration sticker, registration plate or digital registration plate or other evidences of proper registration not issued for such vehicle or not otherwise lawfully used thereon under this Code."

*Id.* A violation is considered a Class C misdemeanor (*id.*), which is punishable by up to 30 days' imprisonment and a fine of up to $1500. 730 ILCS 5/5-4.5-65(a), (e) (West 2012). Both statutes are virtually the same today as they were when Sroga committed his offense. See 625 ILCS 5/3-703, 4-104(a)(4) (West 2020); 625 ILCS 5/3-703, 4-104(a)(4) (West 2012). And the punishments for Class A and Class C misdemeanors remain the same today as when Sroga committed the

offense. See 730 ILCS 5/5-4.5-55, 5-4.5-65 (West 2020); 730 ILCS 5/5-4.5-55, 5-4.5-65 (West 2012).

¶ 22 Initially, we note that section 4-104(a)(4) utilizes the term "license plate" whereas section 3-703 utilizes the term "registration plate." See 625 ILCS 5/3-703; 4-104(a)(4) (West 2012). But previous decisions from Illinois courts have used the term "license plate" and "registration plate" interchangeably. See generally *People v. Gaytan*, 2015 IL 116223; *People v. Varnauskas*, 2018 IL App (3d) 150654; *People v. Rucker*, 294 Ill. App. 3d 218 (1998); *People v. Miller*, 255 Ill. App. 3d 577 (1994). Additionally, the Vehicle Code uses the terms interchangeably. For instance, section 1-190.1 of the Vehicle Code (625 ILCS 5/1-190.1 (West 2020)), which is titled "Special license plate," provides that "[r]egistration plates issued by the Secretary of State that by statute require, in addition to the applicable registration fee, an additional fee that is to be deposited into the Secretary of State Special License Plate Fund." Similarly, section 3-627 of the Vehicle Code (625 ILCS 5/3-627 (West 2020)), which is titled "Environmental License Plate," provides that the Illinois Secretary of State "may issue special registration plates designated to be environmental license plates." This interchangeability is exhibited in other sections of the Vehicle Code, as well. See 625 ILCS 5/3-401.5, 3-501.1, 3-658 (West 2020). Consequently, "license plate" and "registration plate" are synonymous.

¶ 23 With that initial issue out of the way, we can break down the relevant language of both provisions of the Vehicle Code more succinctly for purposes of this appeal. To this end, section 4-104(a)(4) makes it unlawful for "[a] person to display or affix to a vehicle any *** license plate *** not authorized by law for use on such vehicle." 625 ILCS 5/4-104(a)(4) (West 2012). Conversely, section 3-703 makes it unlawful for a person to "display upon a vehicle any *** registration plate *** not issued for such vehicle or not otherwise lawfully used thereon." 625

ILCS 5/3-703 (West 2012). Despite the similar language and prohibition, the State argues that the provisions do not share the same culpable mental state. Although the State acknowledges no culpable mental state is explicitly required by either provision, it asserts that, because section 4-104(a)(4) is punishable as a Class A misdemeanor compared to section 3-703 being punishable as a Class C misdemeanor, a knowing mental state should be implied into section 4-104(a)(4) whereas section 3-703 should be construed as an absolute liability offense.

¶ 24    An absolute liability offense is an offense in which culpability is not an element. *People v. Kite*, 153 Ill. 2d 40, 44 (1992). The Criminal Code of 2012 allows for an absolute liability offense only where "the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $1,000, or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." 720 ILCS 5/4-9 (West 2012). Section 4-9 of the Criminal Code of 2012 applies to all criminal offenses even those outside the Criminal Code of 2012. See *People v. Molnar*, 222 Ill. 2d 495, 519 (2006) (stating that "[s]ection 4-9 [of the Criminal Code of 1961]," which dictated the circumstances in which an absolute liability offense may exist under the Criminal Code of 1961—the predecessor to the Criminal Code of 2012— "applies to all criminal penalty provisions, including those outside the Criminal Code of 1961"). In light of section 4-9 of the Criminal Code of 2012, even where no culpable mental state appears in the language of a statute, courts will infer one whenever possible (*People v. Witherspoon*, 2019 IL 123092, ¶ 30) in order to comport with the general rule that a criminal offense involves an act accompanied by a culpable mental state. *In re K.C.*, 186 Ill. 2d at 546.

¶ 25                    D. Section 4-104(a)(4) of the Vehicle Code

¶ 26    With these principles of absolute liability in mind, we first turn to section 4-104(a)(4) to determine whether it is an absolute liability offense. A first violation of section 4-104(a)(4) is a

Class A misdemeanor (625 ILCS 5/4-104(b)(3) (West 2012)), which is punishable by a sentence of imprisonment of up to 364 days and a fine not to exceed $2500. 730 ILCS 5/5-4.5-55(a), (e) (West 2012). A subsequent violation of section 4-104(a)(4) is a Class 4 felony (625 ILCS 5/4-104(b)(3) (West 2012)), which is punishable by one to three years' imprisonment. 730 ILCS 5/5-4.5-45(a) (West 2012). Given that a first violation, as was the case with petitioner, is punishable as a Class A misdemeanor with potential imprisonment and a $2500 fine, possession of unauthorized registration on a vehicle could only be an absolute liability offense if there was a clear legislative intent to impose absolute liability. See 720 ILCS 5/4-9 (West 2012); *People v. Sito*, 2013 IL App (1st) 110707, ¶ 30 (where the statute providing for the offense of unauthorized possession or storage of weapons did not contain a culpable mental state and was a Class A misdemeanor punishable by incarceration, absolute liability for the offense could be imposed only if there was a "clear indication of a legislative purpose to impose absolute liability").

¶ 27     Our supreme court in *People v. Gean*, 143 Ill. 2d 281 (1991), laid out a rubric for determining when a statute clearly indicates a legislative purpose to impose absolute liability for the conduct described. In the case, the court had to determine whether sections 4-104(a)(1) and (a)(2) of the Vehicle Code were absolute liability offenses. *Id.* at 287-88. At the time, those sections made it unlawful for:

> "1. A person to possess without authority any manufacturers statement of origin, certificate of title, salvage certificate, junking certificate, display certificate of title, registration card, license plate, registration sticker or temporary registration permit, whether blank or otherwise;

> 2. A person to possess any manufacturers certificate of origin, salvage certificate, junking certificate, certificate of title, display certificate without complete assignment."

Ill. Rev. Stat. 1987, ch. 95 ½, ¶ 4-104(a)(1), (2). And a violation of either subsection was punishable as a Class 4 felony. Ill. Rev. Stat. 1987, ch. 95 ½, ¶ 4-104(b)(1).

¶ 28    Our supreme court first observed that neither section 4-104(a)(1) or 4-104(a)(2) contained a culpable mental state, and, as a result, it had to determine whether there was a strong legislative intent to make the offenses absolute liability offenses. *Gean*, 143 Ill. 2d at 287. In arguing that they were absolute liability offenses, the State highlighted section 4-104(a)(3), which made it unlawful to "possess any manufacturer's statement of origin, certificate of title, or salvage certificate, etc., '*knowing* it to have been stolen, converted, altered, forged, or counterfeited.' " (Emphasis added.) *Id.* (quoting Ill. Rev. Stat. 1987, ch. 95 ½, ¶ 4-104(a)(3)). Despite the culpable mental state of knowledge being present in section 4-104(a)(3), the court disagreed that the absence of one in sections 4-104(a)(1) and 4-104(a)(2) demonstrated a clear legislative intent to make those sections absolute liability offenses. *Id.* The court found that, "[a]fter reviewing the legislative history of section 4-104, [it was] unable to find any legislative intent that sections 4-104(a)(1) and (a)(2) [were] absolute liability offenses." *Id.*

¶ 29    Buttressing this conclusion, our supreme court further observed that violations of sections 4-104(a)(1) and 4-104(a)(2) were punishable as Class 4 felonies that carried a "substantial penalty" of up to three years' imprisonment. *Id.* at 288. The court remarked that " '[i]t would be unthinkable to subject a person to a long term of imprisonment for an offense he might commit unknowingly.' " *Id.* at 287 (quoting *People v. Valley Steel Products Co.*, 71 Ill. 2d 408, 425 (1978)). In light of the legislative history of section 4-104 failing to show any legislative intent to make sections 4-

104(a)(1) or 4-104(a)(2) absolute liability offenses and the substantial penalty for violations, our supreme court held that sections 4-104(a)(1) and 4-104(a)(2) were not absolute liability offenses. *Id.* at 288.

¶ 30     Turning to the instant case, we acknowledge, as our supreme court did in *Gean*, that section 4-104(a)(3) contains the culpable mental state of knowledge yet section 4-104(a)(4) contains no culpable mental state. And generally, "by employing certain language in one instance and wholly different language in another, the legislature indicates that different results were intended." *In re K.C.*, 186 Ill. 2d at 549-50. However, despite this principle of statutory construction, as with *Gean*, our search of the legislative history of section 4-104 fails to show any clear legislative purpose to impose absolute liability for the conduct described in section 4-104(a)(4). But just as important are the potential punishments for violating section 4-104(a)(4). A first violation of section 4-104(a)(4) is a Class A misdemeanor with a potential imprisonment of nearly one year (730 ILCS 5/5-4.5-55(a), (e) (West 2012)), which is a "substantial" penalty. *People v Nunn*, 77 Ill. 2d 243, 249 (1979). A subsequent violation of section 4-104(a)(4) is a Class 4 felony (625 ILCS 5/4-104(b)(3) (West 2012)), which, as noted in *Gean*, 143 Ill. 2d at 288, is a substantial penalty. In other words, despite section 4-104(a)(3) containing a culpable mental state and section 4-104(a)(4) not containing one, the potential consequences for violating section 4-104(a)(4) are severe enough that they defeat the general rule of statutory construction that "by employing certain language in one instance and wholly different language in another, the legislature indicates that different results were intended." *In re K.C.*, 186 Ill. 2d at 549-50. The lack of legislative history indicating that a culpable mental state should be implied into section 4-104(a)(4) coupled with the substantial penalties for violations demonstrate that there is no clear legislative purpose to impose absolute liability for the conduct described in section 4-104(a)(4).

¶ 31    Given that the offense of possession of unauthorized registration on a vehicle is a misdemeanor punishable by up to 364 days of imprisonment as well as a fine up to $2500, and the fact that section 4-104(a)(4) does not clearly indicate a legislative purpose to impose absolute liability, possession of unauthorized registration on a vehicle is not an absolute liability offense. See 720 ILCS 5/4-9 (West 2012).

¶ 32    In light of this conclusion, we must determine which mental state should be implied into the statute. When a statute does not provide a culpable mental state applicable to an element of the offense, any of the mental states of intent, knowledge or recklessness may apply. 720 ILCS 5/4-3(b) (West 2012). In *Gean*, 143 Ill. 2d at 288-89, when this very situation occurred with respect to sections 4-104(a)(1) and 4-104(a)(2) of the Vehicle Code, our supreme court concluded that knowledge was the appropriate mental state for the offenses because the purpose of these provisions was to prevent " 'chop shop' " activities. The holding in *Gean* with respect to section 4-104(a)(2) was modified subsequently in *People v. Tolliver*, 147 Ill. 2d 397, 400-02 (1992), where our supreme court observed that a mere knowledge mental state could still punish innocent behavior and provided multiple such examples. Because a violation of section 4-104(a)(2) was a felony, the court modified the holding in *Gean* and required the State to prove "criminal knowledge or knowledge with an intent to defraud or commit a crime," or, in other words, "knowledge plus criminal purpose." *Id.* at 400-01, 03.

¶ 33    Given that a violation of section 4-104(a)(4) is punishable as a misdemeanor, we see no reason for a mental state more culpable than knowledge to be applicable, and therefore, we find the mental state of knowledge appropriate. Therefore, as relevant to this case, section 4-104(a)(4) makes it unlawful for a person to display or affix a license plate to a vehicle *knowing* that it is not authorized by law for use on such vehicle.

¶ 34                    E. Section 3-703 of the Vehicle Code

¶ 35    Having concluded that section 4-104(a)(4) of the Vehicle Code requires an implied mental state of knowledge, we next turn to section 3-703 to determine whether it is an absolute liability offense. As noted, in relevant part, this section provided that: "nor shall any person display upon a vehicle any *** registration plate *** not issued for such vehicle or not otherwise lawfully used thereon." 625 ILCS 5/3-703 (West 2012). A violation of this section is a Class C misdemeanor (*id.*), which is punishable by up to 30 days' imprisonment and a fine of up to $1500. 730 ILCS 5/5-4.5-65(a), (e) (West 2012). Given these potential consequences, improper use of evidence of registration could only be an absolute liability offense if there was a clear legislative intent to impose absolute liability. See 720 ILCS 5/4-9 (West 2012); *Sito*, 2013 IL App (1st) 110707, ¶ 30.

¶ 36    Instructive in determining whether section 3-703 clearly indicates a legislative purpose to impose absolute liability for the conduct described is *People v. O'Brien*, 197 Ill. 2d 88, 89 (2001), where a defendant was charged with operating an uninsured motor vehicle pursuant to section 3-707 of the Vehicle Code. The sole issue on appeal was whether the offense was an absolute liability offense. Section 3-707 at the time provided that "[n]o person shall operate a motor vehicle unless the motor vehicle is covered by a liability insurance policy ***." 625 ILCS 5/3-707 (West 1998). Our supreme court initially noted that no culpable mental state appeared in the statute and that a violation of section 3-707 was not punishable by incarceration but was punishable by a fine exceeding $500. *O'Brien*, 197 Ill. 2d at 92-93.[1] Given this, the court remarked that operating an

_____

[1] At the time of the *O'Brien* decision, section 4-9 of the Criminal Code of 1961 provided that an absolute liability offense could only exist if "the offense is a misdemeanor which is not punishable by incarceration or by a fine *exceeding $500*, or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." (Emphasis added.) 720 ILCS 5/4-9 (West 1998).

uninsured motor vehicle could only be an absolute liability offense if section 3-707 clearly indicated a legislative purpose to impose absolute liability. *Id.* at 92.

¶ 37    In concluding that there was such a clear legislative intent, our supreme court highlighted three sources of intent. *Id.* at 92-95. First, our supreme court highlighted the word "shall" in section 3-707 and found that indicative of a clear "legislative intent to impose a mandatory obligation." *Id.* at 93. Second, the court emphasized the "minor penalty" for violations of section 3-707, observing that the offense was not punishable by imprisonment and only a fine between $501 and $1000, barely above the threshold for absolute liability offenses at the time. *Id.* at 93-94. The court remarked that, where "the penalty is not severe, the likelihood of a legislative intent to impose absolute liability is enhanced." *Id.* at 94. And third, the court "discern[ed] a clear legislative purpose to impose absolute liability" when considering section 3-707 in the context of other related provisions of the Vehicle Code, in particular several other provisions of chapter 3, article VII, that contained the culpable mental state of knowledge. *Id.* at 94-95 (citing 625 ILCS 5/3-701(1) (West 1998); 625 ILCS 5/3-702(a)(1) (West 1998); 625 ILCS 5/3-702(b) (West 1998); 625 ILCS 5/3-703 (West 1998); 625 ILCS 5/3-710 (West 1998)). Given that these related provisions contained the culpable mental state of knowledge and section 3-707 did not, the court found it "must presume that, by specifically including a culpable mental state in the numerous [related] statutes ***, the legislature's omission of a culpable mental state in section 3-707 'indicates that different results were intended.' " *Id.* at 95 (quoting *In re K.C.*, 186 Ill. 2d at 550). To find otherwise, according to the court, would render the language of the related statutes " 'meaningless surplusage.' " *Id.* Consequently, our supreme court held that section 3-707 was an absolute liability offense. *Id.* at 95-96.

¶ 38     Turning back to section 3-703, just as in *O'Brien*, we find that the statute clearly indicates a legislative purpose to impose absolute liability for improper use of evidence of registration. First, just like *O'Brien*, the relevant prohibition in section 3-703 contains the word "shall," which demonstrates a clear "legislative intent to impose a mandatory obligation." *Id.* at 93. Second, the punishment for violating section 3-703 is not so severe. While a Class C misdemeanor is more serious than a petty offense that does not subject a violator to imprisonment (730 ILCS 5/5-1-17 (West 2012); *People v. Studley*, 259 Ill. App. 3d 556, 559 (1994)), a Class C misdemeanor is the least serious of the misdemeanor offenses. See 730 ILCS 5/5-4.5-55 to 5-4.5-65 (West 2012). "Where *** the penalty is not severe, the likelihood of a legislative intent to impose absolute liability is enhanced." *O'Brien*, 197 Ill. 2d at 94.

¶ 39     The less severe punishment for violating section 3-703 leads to the third reason we find the section clearly indicates a legislative purpose to impose absolute liability for improper use of evidence of registration. Unlike in *Gean* and our conclusion with respect to section 4-104(a)(4), the punishment for violating section 3-703 is not so severe that we may disregard the general rule of statutory construction that "by employing certain language in one instance and wholly different language in another, the legislature indicates that different results were intended." *In re K.C.*, 186 Ill. 2d at 549-50. Thus, we find evidence of legislative intent to impose absolute liability by examining other provisions of chapter 3, article VII of the Vehicle Code. Notably, a different prohibition in section 3-703 itself provides that:

> "No person shall lend to another any certificate of title, registration card, registration plate or digital registration plate, registration sticker or digital registration sticker, special plate or permit or other evidences of proper registration issued to him if the person desiring to borrow the same would not be entitled to the

use thereof, nor shall any person *knowingly* permit the use of any of the same by

one not entitled thereto."

(Emphasis added). 625 ILCS 5/3-703 (West 2012). Amongst the various prohibitions in section 3-703, the aforementioned one is the only prohibition where an explicit culpable mental state appears. Because of our legislature's use of the mental state of knowledge in one prohibition in section 3-703 but not anywhere else, in particular the prohibition relevant to this appeal, we must presume that different results were intended. See *O'Brien*, 197 Ill. 2d at 95; *In re K.C.*, 186 Ill. 2d at 550. Otherwise, we would render the word "knowing" in another prohibition of section 3-703 as meaningless surplusage. *O'Brien*, 197 Ill. 2d at 95.

¶ 40    Our conclusion is buttressed by a review of other relevant sections in chapter 3, article VII of the Vehicle Code, where our legislature explicitly included the culpable mental state of knowledge. See 625 ILCS 5/3-701, 3-702, 3-710 (West 2012). Just as in *O'Brien*, we cannot ignore these deliberate indications of legislative intent. Consequently, the relevant prohibition in section 3-703 clearly indicates a legislative purpose to impose absolute liability, and we will not imply a culpable mental state for the specific offense of improper use of evidence of registration.

¶ 41    In sum, section 4-104(a)(4) contains an implied mental state of knowledge whereas the pertinent prohibition in section 3-703 is an absolute liability offense. As such, these offenses do not share the same elements and there is no violation of the proportionate penalties clause of the Illinois Constitution. See *Ligon*, 2016 IL 118023, ¶¶ 10-11, 25. Accordingly, we affirm the circuit court's dismissal of Sroga's section 2-1401 petition.

¶ 42                              III. CONCLUSION

¶ 43    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 44    Affirmed.