**2022 IL 126978**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126978)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. KEVIN SROGA, Appellant.

*Opinion filed May 19, 2022.*

JUSTICE CARTER delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Neville, Michael J. Burke, and Overstreet concurred in the judgment and opinion.

**OPINION**

¶ 1 Petitioner Kevin Sroga was convicted of a Class A misdemeanor under section 4-104(a)(4) of the Illinois Vehicle Code (625 ILCS 5/4-104(a)(4) (West 2012)) for displaying an unauthorized license plate on a vehicle. He later filed a petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)), asserting that his conviction violated the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11). He argued that section 3-703 of the Vehicle Code (625

ILCS 5/3-703 (West 2012)) created a Class C misdemeanor covering the same conduct for which he was convicted but imposed a lesser penalty than section 4-104(a)(4). Neither provision contained an express mental state requirement. The trial court granted the State's motion to dismiss the petition, and petitioner appealed.

¶ 2 The appellate court affirmed the dismissal of the petition, concluding that section 4-104(a)(4) had an implied mental state of knowledge and section 3-703 created an absolute liability offense. 2020 IL App (1st) 171992-U, ¶ 41. Because the mental state requirements of the two offenses were not identical, no proportionate penalties clause violation occurred. We affirm the appellate court's judgment.

¶ 3                                  I. BACKGROUND

¶ 4 After noticing a Crown Victoria car parked on a sidewalk in October 2012, two Chicago police officers ran a license plate check that revealed the car's plates belonged to a different vehicle, a Saturn model. Petitioner approached the officers and stated he was the owner of the Crown Victoria. The officers informed petitioner that the plates were registered to a different vehicle, and petitioner responded, "You got me on the plates." He was later determined to be the owner of both the Crown Victoria and Saturn vehicle. Petitioner was charged in Cook County circuit court with displaying a license plate registered to one vehicle on another vehicle under section 4-104(a)(4) of the Vehicle Code (625 ILCS 5/4-104(a)(4) (West 2012)).

¶ 5 Petitioner was convicted in a jury trial in October 2014 and filed a motion for a new trial. In that motion, he argued that the State improperly charged him with a Class A misdemeanor under section 4-104(a)(4) (*id.*) when it should have charged him with a Class C misdemeanor under section 3-703 of the Vehicle Code (*id.* § 3-703), because he owned both vehicles. The trial court denied petitioner's motion and sentenced him to 12 months' probation and a $500 fine. He did not file a direct appeal. In 2016, he filed a petition seeking relief under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)).

¶ 6 That petition reiterated, *inter alia*, petitioner's prior claim that he was improperly charged under section 4-104(a)(4) when he should have been charged

under section 3-703, which defined identical conduct but carried a less severe penalty. The State filed a motion to dismiss, and petitioner amended his section 2-1401 petition by adding a claim that his conviction violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Relying on principles of *res judicata*, the trial court granted the State's motion to dismiss, finding that petitioner had previously raised that challenge in his original motion for a new trial.

¶ 7    On appeal, the appellate court agreed with petitioner that the penalty imposed pursuant to section 4-104(a)(4) was harsher than that in section 3-703, but it rejected petitioner's disproportionate penalties challenge on its merits because the elements of the two offenses were not identical. 2020 IL App (1st) 171992-U, ¶¶ 21, 41. The court concluded that the statutes' requisite mental states were different, with section 4-104(a)(4) incorporating an implied mental state of knowledge and section 3-703 creating an absolute liability offense with no requisite mental state. *Id.* ¶ 41. Petitioner filed an unsuccessful petition for rehearing, arguing that the decision was contrary to Illinois law because the record did not reveal a clear legislative intent in section 3-703 to impose absolute liability for displaying the wrong license plate. Petitioner then filed a petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2020) and Rule 612 (eff. July 1, 2017), which this court allowed.

¶ 8                                   II. ANALYSIS

¶ 9    Petitioner raises three issues: (1) whether sections 4-104(a)(4) and 3-703 of the Vehicle Code, which define identical conduct, possess the same requisite mental state; (2) whether petitioner's conviction for a violation of section 4-104(a)(4), a Class A misdemeanor, violates the proportionate penalties clause (Ill. Const. 1970, art. I, § 11) by imposing a more severe punishment than section 3-703, a Class C misdemeanor, when the elements of the two offenses are identical; and (3) if a proportionate penalties violation exists, the proper remedy for that violation. Because each of these issues addresses questions of law and statutory construction, we review them *de novo*. *People v. Ligon*, 2016 IL 118023, ¶ 11.

¶ 10   When construing a statute, our primary goal is to ascertain and give effect to the intent of the legislature. *People v. Boclair*, 202 Ill. 2d 89, 100 (2002). If that

intent is discernible from the plain and ordinary meaning of the language enacted, we must effectuate that language and not depart from it by reading in exceptions, restrictions, or conditions that conflict with the expressed legislative intent. *Id.* To determine the legislature's intent, we may consider generally the purpose of the statute, the evils it seeks to remedy, and the goals the legislature sought to achieve. *People v. Blair*, 215 Ill. 2d 427, 443 (2005).

¶ 11　　Because this appeal involves a constitutional challenge, we must start from the presumption that all statutes are constitutionally valid. A reviewing court is bound to construe the challenged statute so as to uphold its constitutionality whenever reasonably possible. *People v. Hollins*, 2012 IL 112754, ¶ 13.

¶ 12　　The proportionate penalties clause is found in article I, section 11, of the Illinois Constitution. It mandates that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. To determine whether the proportionate penalties clause has been violated, this court has adopted the "identical elements test," first applied in *People v. Christy*, 139 Ill. 2d 172, 181 (1990). As its name implies, the identical elements test examines whether the statutes under review contain the same elements. If so, the court must consider whether the penalties for a violation of each provision are also the same. If the penalties are not the same, the statute with the harsher penalty will be deemed to violate the proportionate penalties clause. *Id.*

¶ 13　　In the instant appeal, both parties agree that section 4-104(a)(4), the statute under which petitioner was convicted, and section 3-703 address identical conduct. A straightforward reading of the plain statutory language confirms that conclusion. Section 4-104(a)(4) states:

> "(a) It is a violation of this Chapter for:
>
> * * *
>
> 4. A person to display or affix to a vehicle any certificate of title, manufacturers statement of origin, salvage certificate, junking certificate, display certificate, temporary registration permit, registration card, license

plate or registration sticker not authorized by law for use on such vehicle[.]" 625 ILCS 5/4-104(a)(4) (West 2012).

Section 3-703 provides:

"No person shall lend to another any certificate of title, registration card, registration plate, registration sticker, special plate or permit or other evidences of proper registration issued to him if the person desiring to borrow the same would not be entitled to the use thereof, nor shall any person knowingly permit the use of any of the same by one not entitled thereto, *nor shall any person display upon a vehicle any registration card, registration sticker, registration plate or other evidences of proper registration not issued for such vehicle or not otherwise lawfully used thereon under this Code*. No person shall duplicate, alter or attempt to reproduce in any manner a registration plate or registration sticker issued under this Code. No person shall make fraudulent use of evidences of registration or certificates of title issued erroneously by the Secretary of State. No person shall manufacture, advertise, distribute or sell any certificate of title, registration card, registration plate, registration sticker, special plate or permit or other evidences of proper registration which purports to have been issued under this Code. The Secretary of State may request the Attorney General to seek a restraining order in the circuit court against any person who violates this Section by advertising such fraudulent items. Any violation of this Section is a Class C misdemeanor." (Emphasis added.) *Id.* § 3-703.

¶ 14    Although section 3-703 encompasses multiple offenses, the elements of the particular offense highlighted above are identical to those of the offense in section 4-104(a)(1) for which petitioner was convicted: "nor shall any person display upon a vehicle any registration card, registration sticker, registration plate or other evidences of proper registration not issued for such vehicle or not otherwise lawfully used thereon under this Code." *Id.*; *cf. id.* § 4-104(a)(4) (stating "[i]t is a violation of this Chapter for *** 4. A person to display or affix to a vehicle any certificate of title, manufacturers statement of origin, salvage certificate, junking certificate, display certificate, temporary registration permit, registration card, license plate or registration sticker not authorized by law for use on such vehicle").

¶ 15        On the face of the two statutes, it is also readily apparent that neither incorporates a specific mental state requirement. Thus, to apply the identical elements test, the first step in our inquiry is to determine the proper mental state requirements, if any, in section 4-104(a)(4) and section 3-703.

¶ 16        Generally, if a "statute does not prescribe a particular mental state applicable to an element of an offense (other than an offense which involves absolute liability), any mental state defined in Sections 4-4 [(intent)], 4-5 [(knowledge)] or 4-6 [(recklessness)] is applicable." 720 ILCS 5/4-3(b) (West 2012). The " ' "mere absence of express language describing a mental state does not *per se* lead to the conclusion that none is required." ' " *People v. Witherspoon*, 2019 IL 123092, ¶ 30 (quoting *People v. Gean*, 143 Ill. 2d 281, 286 (1991), quoting *People v. Valley Steel Products Co.*, 71 Ill. 2d 408, 424 (1978)). Section 4-9 defines two broad standards identifying whether a particular offense imposes absolute liability:

    "A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in Sections 4-4 through 4-7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding \$1,000, or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." 720 ILCS 5/4-9 (West 2012).

See *Witherspoon*, 2019 IL 123092, ¶ 29.

¶ 17        The first standard is wholly objective, comparing the possible penalties for the offense to the punishment guidelines set forth in section 4-9. The second standard requires the court to determine whether the legislature expressed a clear intent to create an absolute liability offense. When construing a statute without an express mental state to ascertain whether it imposes absolute liability, we will infer a mental state element whenever possible. *Witherspoon*, 2019 IL 123092, ¶ 30 (citing *People v. O'Brien*, 197 Ill. 2d 88, 92 (2001)). We now examine section 4-104(a)(4) and section 3-703 to determine whether the legislature intended either of them to create absolute liability. If we determine that absolute liability was not intended, we will infer the requisite mental state.

¶ 18                              A. Section 4-104(a)(4)

¶ 19          We turn first to section 4-104(a)(4). We begin by applying the first standard of identifying an absolute liability offense in section 4-9. Under that standard, an offense imposes absolute liability if it is a misdemeanor that cannot be punished by incarceration or a fine of over $1000. 720 ILCS 5/4-9 (West 2012). A first-time violation of section 4-104(a)(4), however, is a Class A misdemeanor that carries the possibility of up to 364 days in jail and a fine of up to $2500. 625 ILCS 5/4-104(a)(4), (b)(3) (West 2012); 730 ILCS 5/5-4.5-55(a), (e) (West 2012). Moreover, subsequent violations of section 4-104(a)(4) result in a Class 4 felony, accompanied by even harsher penalties. 625 ILCS 5/4-104(b)(3) (West 2012); 730 ILCS 5/5-4.5-45 (West 2012). Because the potential penalties for a violation of section 104(a)(4) exceed the ceiling for a finding of absolute liability under the first standard enumerated in section 4-9, section 4-104(a)(4) does not qualify as an absolute liability offense under that standard. 720 ILCS 5/4-9 (West 2012) (allowing a finding of absolute liability "if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $1,000"); 2020 IL App (1st) 171992-U, ¶¶ 30-31.

¶ 20          Applying the second section 4-9 standard for identifying an absolute liability offense requires a determination of whether, in the absence of any express language, the legislature clearly intended to impose absolute liability for the conduct defined. As we explained in *Gean*, 143 Ill. 2d at 287, the severity of the potential punishment is a critical factor in ascertaining whether the legislature intended to create an absolute liability offense. That is because " '[i]t would be unthinkable to subject a person to a long term of imprisonment for an offense he might commit unknowingly.' [Citation.] Therefore, 'where the punishment is great, it is less likely that the legislature intended to create an absolute liability offense.' [Citations.]" *Id.* Thus, we must look at the severity of the potential punishment for violating section 4-10(4)(a).

¶ 21          A first violation of section 4-104(a)(4) is a Class A misdemeanor, bearing with it the highest possible penalty for any misdemeanor: up to 364 days in jail and a fine of up to $2500. 625 ILCS 5/4-104(a)(4) (West 2012); 730 ILCS 5/5-4.5-55(a), (e) (West 2012). In *People v. Nunn*, 77 Ill. 2d 243 (1979), we considered the severity of the possible punishment for a Class A misdemeanor while addressing

whether the legislature intended that another Vehicle Code provision created absolute liability. In holding that it did not, we analyzed that statute under the standards in section 4-9. *Id.* at 249. After noting that the offense in *Nunn* was a Class A misdemeanor, we concluded that the potential penalty for that class of offense "must be considered substantial." *Id.* The parties have offered no rationale for departing from that conclusion in this case. Thus, we conclude that section 4-104(a)(4) does not create an absolute liability offense under the second standard in section 4-9.

¶ 22    In the absence of an express mental state requirement or a finding of absolute liability for section 4-104(a)(4), we must infer a mental state of intent, knowledge, or recklessness. 720 ILCS 5/4-3(b) (West 2012). Section 4-5 of the Criminal Code of 2012 (Criminal Code) defines the mental state of "knowledge:"

> "A person knows, or acts knowingly or with knowledge of:
>
> (a) The nature or attendant circumstances or his or her conduct, described by the statute defining the offense, when he or she is consciously aware that his or her conduct is of that nature or that those circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that the fact exists.
>
> (b) The result of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that that result is practically certain to be caused by his conduct." *Id.* § 4-5.

¶ 23    The appellate court assessed that knowledge is the proper inferred mental state in section 4-104(a)(4), and the parties agree. In reaching that conclusion, the appellate court discussed this court's decisions in *Gean* and *People v. Tolliver*, 147 Ill. 2d 397 (1992), where we examined the applicable mental state to be inferred in section 4-104(a)(1), (2), which also lacked an express mental state. In *Gean*, we held that knowledge was the appropriate mental state for both subsections (a)(1) and (a)(2) because "[k]nowledge generally refers to an awareness of the existence of the facts which make an individual's conduct unlawful" and those offenses were designed to criminalize the operation of "chop shops." *Gean*, 143 Ill. 2d at 288-89 (citing 21 Am. Jur. 2d *Criminal Law* § 136 (1981)).

¶ 24     *Tolliver* modified that mental state requirement for section 4-104(a)(2), a felony offense, by adding a requisite showing of criminal intent to the knowledge requirement. We reasoned that, without an additional showing of criminal intent to defraud or commit a crime, individuals could be convicted of a felony and be subjected to severe punishment for purely innocent conduct, an outcome we could not countenance. *Tolliver*, 147 Ill. 2d at 400-01.

¶ 25     Unlike the Class 4 felony offense created by section 4-104(a)(2), a first violation of section 4-104(a)(4) constitutes a Class A misdemeanor. While Class A misdemeanors carry a "substantial" penalty (*Nunn*, 77 Ill. 2d at 249), that penalty is far less onerous than the potential punishment for a Class 4 felony. Thus, we agree with the appellate court that *Gean* and *Tolliver* counsel in favor of inferring a mental state of knowledge in section 4-104(a)(4). That requirement is sufficient to deter the misdemeanor conduct defined in section 4-104(a)(4). Thus, a violation of section 4-104(a)(4) occurs if a person displays or affixes a license plate for the first time while knowing that the law does not authorize its use on that vehicle.

¶ 26                                    B. Section 3-703

¶ 27     Next, we turn to section 3-703 to determine whether the legislature intended that it impose absolute liability. As we did with section 4-104(a)(4), we start by applying the two standards outlined in section 4-9 (720 ILCS 5/4-9 (West 2012)). The first standard in section 4-9 bars a misdemeanor bearing a potential punishment of incarceration or a fine over $1000 from being deemed an absolute liability offense. *Id.* Because section 3-703 creates a Class C misdemeanor that is punishable by a sentence of up to 30 days in jail and a maximum fine of $1500 (730 ILCS 5/5-4.5-65(a), (e) (West 2012)), we conclude it cannot be an absolute liability offense under the first standard in section 4-9.

¶ 28     Applying the second standard in section 4-9, we next consider whether the legislature showed its clear intent to impose absolute liability. 720 ILCS 5/4-9 (West 2012). After relying on this court's decision in *O'Brien*, 197 Ill. 2d 88, the appellate court concluded that it did. 2020 IL App (1st) 171992-U. In *O'Brien*, we held that the plain language of section 3-707 of the Criminal Code of 1961, barring the operation of a motor vehicle without liability insurance coverage, " 'clearly

indicates a legislative purpose to impose absolute liability for the conduct described.' " *O'Brien*, 197 Ill. 2d at 92 (quoting 720 ILCS 5/4-9 (West 1998)).

¶ 29        Petitioner argues that *O'Brien* is distinguishable from this case because section 3-707 defines a business offense that is not subject to the possibility of incarceration, unlike section 3-703. We disagree. Although we noted in O'Brien that section 3-707 was a business offense bearing no risk of incarceration, our analysis did not end there.

¶ 30        Indeed, the critical portion of our analysis enumerated three "sources" for gleaning the clear legislative intent to impose absolute liability as required by section 4-9. Those sources include a review of (1) the plain statutory language, (2) the comparative severity of the potential penalty, and (3) a reading of the statute in the context of related provisions. *Id.* at 92-94. Before deciding that the legislature clearly intended to impose absolute liability in section 3-707, we applied each of those sources of guidance to ascertain the legislature's intent and will conduct that same review here. We look first to the plain language of section 3-703.

¶ 31        Petitioner argues that the appellate court erred in reading that statutory language by relying on *O'Brien*'s construction of "shall," a word common to both section 3-707 and section 3-703. Section 3-707 provided that " '[n]o person shall operate a motor vehicle unless the motor vehicle is covered by a liability insurance policy in accordance with Section 7-601 of this Code.' " *Id.* at 92 (quoting 625 ILCS 5/3-707 (West 1998)). We emphasized the legislature's selection of the word "shall," "which this court has construed as a clear expression of legislative intent to impose a mandatory obligation" (*id.* at 93) in *Village of Winfield v. Illinois State Labor Relations Board*, 176 Ill. 2d 54, 64 (1997), and *People v. Thomas*, 171 Ill. 2d 207, 222 (1996). As we explained, *Thomas* construed "shall" as clearly expressing an intent to create a mandatory duty "in the absence of any statutory exceptions." *O'Brien*, 197 Ill. 2d at 93. For those reasons, the plain language of section 3-707 "unquestionably" evinced the clear legislative intent to create absolute liability. *Id.* at 92.

¶ 32        Petitioner, however, argues that the specially concurring opinion in *O'Brien* is better reasoned, contending that the inclusion of "shall" is "not particularly relevant" when determining whether the legislature intended to create absolute liability. *Id.* at 97 (McMorrow, J., specially concurring, joined by Freeman and

- 10 -

Kilbride, JJ.). He differentiates between how "shall" was used in section 3-707 in *O'Brien* and how it is used here in section 3-703. He claims that "shall" was used in *O'Brien* to create "a mandatory obligation" to purchase auto insurance, while it is used in section 3-703 "in the different sense of a prohibition" that bars the display of a license plate not issued for a particular vehicle.

¶ 33 We are not persuaded by petitioner's attempt to differentiate the legislature's use of "shall" here and in *O'Brien*. He fails to explain why the virtually identical language that introduces both section 3-707 in *O'Brien* and section 3-703 here leads to the divergent conclusions that the former imposes absolute liability while the latter does not. The initial words in both statutes are "[n]o person shall." Section 3-707 states: "[n]o person shall operate a motor vehicle unless the motor vehicle is covered by a liability insurance policy" (625 ILCS 5/3-707 (West 1998)), while section 3-703 provides that "[n]o person shall lend to another *** nor shall any person display upon a vehicle any *** registration plate *** not issued for such vehicle" (625 ILCS 5/3-703 (West 2012)). Petitioner's attempt to justify this court's differential treatment of the two sections largely relies on his claim that section 3-707 creates a mandate and section 3-703 creates a prohibition. We find that claim to be a distinction without a difference.

¶ 34 The purported "mandate" in section 3-707 to obtain insurance coverage can be read just as easily to prohibit the operation of a motor vehicle without such coverage. Moreover, we did not draw any distinction between the use of "shall" in the context of statutes that created mandates versus those that created prohibitions in our discussion of the plain statutory language in *O'Brien*. Petitioner has failed to offer a convincing rationale for distinguishing our analysis of the plain statutory language in *O'Brien*.

¶ 35 Turning next to the second "source" for determining legislative intent in *O'Brien*, we examined the impact the potential penalty for a violation of the statute had on the likelihood that it was intended to impose absolute liability. *O'Brien*, 197 Ill. 2d at 93. We noted that the possible penalty for a violation of section 3-707 included a fine ranging from $501 to $1000, a range that "only slightly exceed[ed] the $500 statutory maximum for *per se* absolute liability offenses" in section 4-9 (720 ILCS 5/4-9 (West 1998)). *O'Brien*, 197 Ill. 2d at 93-94. Applying a principle borrowed from *Gean*, 143 Ill. 2d at 287, we explained that, "where the penalty is

- 11 -

severe, the likelihood of a legislative intent to impose absolute liability is reduced" and declared that "[t]he converse also is true." *O'Brien*, 197 Ill. 2d at 94. Finding that a fine between $501 and $1000 was "not severe," we concluded that "the likelihood of a legislative intent to impose absolute liability is enhanced." *Id.*

¶ 36   Similarly, here section 3-703 defines a number of Class C misdemeanors, including the offense that duplicates the physical acts defined in section 4-104(a)(4). 625 ILCS 5/3-703 (West 2012). Class C misdemeanors are subject to a possible jail sentence, unlike the offense in *O'Brien*, but that sentence is limited to a maximum of 30 days in jail, a term that cannot reasonably be deemed to be "severe." See 730 ILCS 5/5-4.5-65(a), (e) (West 2012) (stating the punishments for a Class C misdemeanor). The section 3-703 offense is also punishable by a maximum fine of $1500 (*id.*), a sum that is only slightly above the range we concluded was not severe in *O'Brien*. A difference of $500 in the maximum fine that could be imposed in *O'Brien* and section 3-703 is not sufficient to render the misdemeanor in *O'Brien* an absolute liability offense without a similar finding here. The potential penalty in section 3-703 is far closer to that in *O'Brien* than it is to the felony offenses in *Gean* that we deemed too serious not to require the inference of a mental state element. As in *O'Brien*, the relatively minor penalties that could be imposed for a violation of section 3-703 are consistent with an enhanced likelihood that the legislature intended to create an absolute liability offense. See *O'Brien*, 197 Ill. 2d at 94 (stating "[w]here, as here, the penalty is not severe, the likelihood of a legislative intent to impose absolute liability is enhanced").

¶ 37   Finally, we apply the third source of legislative intent to impose absolute liability gleaned from *O'Brien* by construing section 3-703 alongside related Vehicle Code provisions. *Id.* The third method grew out of our decision in *In re K.C.*, 186 Ill. 2d 542, 550 (1999), where we held that section 4-102(a)(1), (2) of the Vehicle Code (625 ILCS 4-102(a)(1), (2) (West 1996)), barring unauthorized persons from damaging or tampering with a vehicle, defined absolute liability offenses. To support that conclusion in *In re K.C.*, we compared section 4-102(a)(2) of the Vehicle Code with section 21-2 of the Criminal Code (720 ILCS 5/21-2 (West 1996)). *In re K.C.*, 186 Ill. 2d at 549-50. Although both statutes involved unlawful trespass to a vehicle, section 4-102(a)(2) did not include a mental state, but section 21-2 had a knowledge requirement. *Id.* at 550. We concluded that the use of " 'certain language in one instance and wholly different language in

another' " signaled the legislative intent to make section 4-102(a)(2) an absolute liability offense. *O'Brien*, 197 Ill. 2d at 94 (quoting *In re K.C.*, 186 Ill. 2d at 549-50). We also cautioned that a contrary construction would render the " ' "knowingly" ' " mental state in section 21-2 " ' "meaningless surplusage." ' " *Id.* (quoting *In re K.C.*, 186 Ill. 2d at 550).

¶ 38        Applying a similar analysis to construe whether the legislature intended section 3-707 to impose absolute liability in *O'Brien*, we noted that "chapter 3, article VII, of the Code is replete with penal statutes containing a culpable mental state." *Id.* We compared the absence of a mental state in section 3-707 with the express knowledge requirement in 3-701(1), section 3-702(a)(1), (b), and section 3-710 (625 ILCS 5/3-701(1), 3-702(a)(1), (b), 3-710 (West 1998)). *O'Brien*, 197 Ill. 2d at 95. Particularly telling here, we recognized that one of the offenses defined in section 3-703 (625 ILCS 5/3-703 (West 1998)) also included a knowledge requirement. *O'Brien*, 197 Ill. 2d at 95. We concluded that the express inclusion of a culpable mental state in those related statutes presumptively established the legislature's intent to signal its intent to create absolute liability in section 3-707 by omitting an express mental state. *Id.* at 94-95. We then reiterated our admonishment in *In re K.C.*, stating that, "were we to hold that section 3-707 implicitly requires proof of a culpable mental state, the specific knowledge requirements of sections 3-701, 3-702(a)(1), 3-702(b), 3-703, and 3-710 would be rendered 'meaningless surplusage.' " *Id.* at 95.

¶ 39        Our review of the language used in statutes addressing related matters in *O'Brien* and *In re K.C.* directly guides our review of petitioner's proportionate penalty clause challenge in this case. We cannot ignore our recognition in *O'Brien* that chapter 3, article 7, of the Vehicle Code, defining conduct identical to that for which petitioner was convicted in section 4-104(a)(4), includes numerous offenses with an express knowledge requirement. Those provisions in section 3-701(1), stating that "[n]o person shall operate, nor shall an owner knowingly permit to be operated" a vehicle without proper registration (625 ILCS 5/3-701(1) (West 2012)), section 3-702(a)(1), providing that "[n]o person shall operate, nor shall an owner knowingly permit to be operated" a vehicle with an invalid registration (*id.* § 3-702(a)(1)), section 3-702(b), mandating that "[n]o person shall use, nor shall any owner use or knowingly permit the use of" an invalid vehicle registration (*id.* § 3-702(b)), and section 3-710, asserting that "[n]o person shall display evidence of

- 13 -

insurance to a law enforcement officer, court, or officer of the court, knowing there is no valid liability insurance in effect on the motor vehicle" (*id.* § 3-710). Most tellingly, one of the offenses neighboring the one at issue here in section 3-703 also includes a culpable mental state, providing that "[n]o person shall *** knowingly permit the use of any [evidence of vehicle registration] by one not entitled thereto" (*id.* § 3-703). See *O'Brien*, 197 Ill. 2d at 94-95.

¶ 40    Applying the reasoning from *O'Brien*, we conclude that the failure to include a mental state requirement in the section 3-703 offense at issue sufficiently establishes the legislature's intent to create a less serious offense than in section 4-104(a)(4). We "presume that, by specifically including a culpable mental state in the numerous statutes identified above, the legislature's omission of a culpable mental state" (*id.* at 95 (citing *In re K.C.*, 186 Ill. 2d at 550)) in the section 3-703 offense here "indicates that different results were intended" (*id.* at 94 (citing *In re K.C.*, 186 Ill. 2d at 550)). We conclude that the legislature intended to impose absolute liability in the relevant offense in section 3-703.

¶ 41    Our conclusion is consistent with the legislature's acquiescence in our holding in *O'Brien*. *People v. Casler*, 2020 IL 125117, ¶ 36 (stating " '[i]t is axiomatic that where a statute has been judicially construed and the construction has not evoked an amendment, it will be presumed that the legislature has acquiesced in the court's exposition of the legislative intent' " (quoting *People v. Hairston*, 46 Ill. 2d 348, 353 (1970))). If the legislature disagreed with our analysis in *O'Brien* and *In re K.C*, it had innumerable opportunities to amend the relevant statutes to clarify its intent during the decades since those decisions were filed. It has not done so.

¶ 42    Having reviewed the three sources useful for inferring legislative intent to create absolute liability in *O'Brien*, we conclude that each one supports the conclusion that the legislature intended that the relevant portion of section 3-703 create an absolute liability offense.

¶ 43    Nonetheless, petitioner argues that, if that provision imposes absolute liability, it improperly criminalizes wholly innocent conduct, citing the example of an owner of multiple vehicles who accidentally swaps the license plates issued for two of those vehicles. He argues that no threat of immediate public danger or strong public policy supports the criminalization of that innocent error. See *In re K.C.*, 186 Ill. 2d at 553 (concluding that offenses punishing motor vehicle vandalism were

- 14 -

constitutionally defective because they "sweep too broadly, potentially imprisoning Good Samaritans, errant batters, and even wedding parties, all of whom possess wholly innocent motives"). Therefore, petitioner contends that policy considerations require this court to infer an implied mental state in section 3-703.

¶ 44 Under our constitution, the legislature has the exclusive power to enact state laws after balancing the relevant interests. "It is not our role to inject a compromise, but, rather, to interpret the acts as written." *Folta v. Ferro Engineering*, 2015 IL 118070, ¶ 43. "[W]e do not sit as a superlegislature to weigh the wisdom of legislation nor to decide whether the policy which it expresses offends the public welfare." (Internal quotation marks omitted.) *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 557 (2009). Moreover, if we adopt petitioner's view and infer a mental state requirement in section 3-703, that construction would render the express mental state requirements the legislature chose to include in other offenses within that article, including one in section 3-703 itself, " ' "meaningless surplusage." ' " *O'Brien*, 197 Ill. 2d at 94 (quoting *In re K.C.*, 186 Ill. 2d at 550). For that reason, we decline to adopt petitioner's suggestion.

¶ 45 We have carefully applied the three sources in *O'Brien* of determining whether the legislature intended to impose absolute liability. After reaching the same conclusion in each instance, we hold that section 3-703 at issue here was intended to impose absolute liability.

¶ 46                                    III. CONCLUSION

¶ 47 Having inferred a requisite mental state of knowledge for petitioner's section 4-104(a)(4) conviction and concluded that the parallel provision in section 3-703 imposes absolute liability, we reject petitioner's proportionate penalties clause challenge. Although the two offenses criminalize the same physical act, they possess different mental state requirements. Because section 4-104(a)(4) has an inferred mental state of knowledge and section 3-703 imposes absolute liability, the imposition of harsher punishment for a conviction under section 4-104(a)(4) than under section 3-703 is constitutionally sound. Thus, we need not address the proper remedy for a constitutional violation in this case. Accordingly, we affirm the appellate court's judgment that upheld the dismissal of petitioner's section 2-1401

petition asserting a proportionate penalties clause violation.

¶ 48          Judgments affirmed.