**2025 IL 130173**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 130173)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
DESHAWN WALLACE, Appellant.

*Opinion filed May 22, 2025.*

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, Rochford, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1 At issue in this appeal is whether a felony conviction for armed robbery committed by defendant Deshawn Wallace in 2008, when he was 17 years old, may serve as a qualifying or predicate felony conviction for the offense of being an armed habitual criminal, for which Wallace was convicted in 2019. The appellate court concluded that it may. 2023 IL App (1st) 200917. For the reasons that follow,

we affirm the judgment of the appellate court.

¶ 2                                        BACKGROUND

¶ 3        On May 2, 2019, Wallace was sitting in the front passenger seat of a car that had been stopped by Chicago police officers because it was missing a rear brake light. As one of the police officers approached the side of the car where Wallace was seated, he smelled the odor of alcohol and cannabis coming from the car's interior. The police officer also saw a bag of cannabis next to Wallace's leg and a "large bulge" in the pocket of Wallace's jacket. After performing a protective pat-down, the police officer recovered a handgun from Wallace's jacket. Wallace admitted that he did not have a Firearm Owner's Identification (FOID) card or a concealed carry license. Wallace was arrested and eventually charged with one count of being an armed habitual criminal (720 ILCS 5/24-1.7 (West 2018)), along with multiple counts of unlawful use of a weapon by a felon (*id.* § 24-1.1(a)) and aggravated unlawful use of a weapon (*id.* § 24-1.6(a)(1)).

¶ 4        Prior to trial, Wallace filed a motion to suppress the recovery of the handgun, arguing that the police lacked probable cause to conduct a search. Following a hearing at which the arresting police officer testified regarding the circumstances of Wallace's arrest and video from the officer's body worn camera (body cam) was admitted into evidence, the Cook County circuit court denied the motion to suppress.

¶ 5        At a subsequent bench trial, the parties stipulated that, if called as a witness, the arresting police officer would testify as he did at the suppression hearing. The parties also stipulated to the admission of the police officer's body cam video and the admission of records showing that Wallace did not possess a FOID card or a concealed carry license.

¶ 6        In support of the armed habitual criminal charge, which required proof that Wallace had at least two prior qualifying or predicate felony convictions, the State introduced into evidence certified copies of Wallace's previous convictions for two felony offenses: a 2008 conviction for armed robbery with a firearm and a 2015 conviction for unlawful use of a weapon by a felon. At the trial's conclusion, the trial court found Wallace guilty of all charged counts. The trial court then merged

the convictions into a single conviction for being an armed habitual criminal. The trial court sentenced Wallace to six years of imprisonment.

¶ 7 On appeal, Wallace first argued that his conviction for being an armed habitual criminal should be reversed because the trial court erred in denying his motion to suppress. The appellate court rejected that argument. 2023 IL App (1st) 200917, ¶¶ 15-29.[1]

¶ 8 Wallace next argued in the appellate court that he was improperly convicted of being an armed habitual criminal because the State had failed to prove beyond a reasonable doubt one of the predicate convictions necessary to establish that offense. *Id.* ¶¶ 31-42. Wallace noted that his conviction for armed robbery was based on an offense committed in 2008 when he was 17 years old. He further noted that, in 2014, the General Assembly had amended the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2014)) to raise the age of potential eligibility for juvenile court from 16 years to 17 years. See Pub. Act 98-61, § 5 (eff. Jan. 1, 2014) (amending 705 ILCS 405/5-120, 5-130). Wallace then argued that the conduct that led to his conviction in the 2008 case would have resulted in a juvenile adjudication rather than a criminal conviction had it been committed in 2019, at the time of his arrest for being an armed habitual criminal. Therefore, according to Wallace, his 2008 conviction could not serve as a predicate conviction for the offense of being an armed habitual criminal.

¶ 9 The appellate court rejected that argument and affirmed Wallace's conviction for being an armed habitual criminal. 2023 IL App (1st) 200917, ¶¶ 31-42. The appellate court concluded that the armed habitual criminal statute considers only whether there are two or more qualifying, predicate convictions and not how the prior offenses would be charged or punished under current laws. *Id.* This court allowed Wallace's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021).

---

[1]Wallace has not raised any challenge to the appellate court's ruling regarding the motion to suppress in this appeal.

¶ 10                                    ANALYSIS

¶ 11        At issue in this appeal is whether Wallace's 2008 conviction for armed robbery, committed when he was 17 years old, may serve as a predicate conviction for the offense of being an armed habitual criminal in 2019. To resolve this issue, we must interpret the armed habitual criminal statute. At the time of Wallace's arrest in 2019, the armed habitual criminal statute provided:

> "(a) A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:
>
> (1) a forcible felony as defined in Section 2-8 of this Code;
>
> (2) unlawful possession of a weapon by a felon; aggravated unlawful possession of a weapon; aggravated discharge of a firearm; vehicular hijacking; aggravated vehicular hijacking; aggravated battery of a child as described in Section 12-4.3 or subdivision (b)(1) of Section 12-3.05; intimidation; aggravated intimidation; gunrunning; home invasion; or aggravated battery with a firearm as described in Section 12-4.2 or subdivision (e)(1), (e)(2), (e)(3), or (e)(4) of Section 12-3.05; or
>
> (3) any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher." 720 ILCS 5/24-1.7(a) (West 2018).[2]

¶ 12        When interpreting a statute, our primary objective is to ascertain and give effect to the intent of the legislature. *People v. Sroga*, 2022 IL 126978, ¶ 10. The most reliable indicator of that intent is the statutory language itself, given its plain and ordinary meaning, and we may not depart from that language by reading in exceptions, restrictions, or conditions. *Id.* Our review is *de novo*. *Id.* ¶ 9.

---

[2]Effective January 1, 2025, section 24-1.7 of the Criminal Code of 2012 was amended to rename the offense "[u]nlawful possession of a firearm by a repeat felony offender." See Pub. Act 103-822, § 20 (eff. Jan. 1, 2025) (amending 720 ILCS 5/24-1.7).

¶ 13    A person is guilty of the offense of being an armed habitual criminal if he or she possesses a gun "after having been convicted" at least twice of the predicate offenses listed in the statute. That is what happened here. Wallace possessed a firearm on the night he was arrested in 2019. At that time, he had two prior felony convictions—one for unlawful use of a weapon by a felon and one for armed robbery with a firearm. The former offense is listed as a predicate offense under subsection (a)(2) of the armed habitual criminal statute (720 ILCS 5/24-1.7(a)(2) (West 2018)). The latter offense is a "forcible felony as defined in section 2-8 of [the Criminal Code of 2012]" under subsection (a)(1) of the statute (*id.* § 24-1.7(a)(2)). See *id.* § 2-8 (a "forcible felony" includes robbery or "any other felony which involves the use or threat of physical force or violence against any individual"). Wallace's conduct thus falls squarely within the plain terms of the armed habitual criminal statute.

¶ 14    Nevertheless, Wallace contends that his conviction under that statute must be reversed. As he did in the appellate court, Wallace argues in this court that the State failed to prove the predicate conviction for armed robbery beyond a reasonable doubt. Wallace again notes that, when he committed the armed robbery in 2008, he was 17 years old. At that time, the Juvenile Court Act provided that juvenile court proceedings applied only to minors who were younger than 17 years of age. 705 ILCS 405/5-120 (West 2008). Because Wallace was 17 years old when he committed the armed robbery, he was not eligible for juvenile adjudication. Instead, he was prosecuted as an adult and received a criminal conviction.

¶ 15    Wallace points out, however, that in 2014, the Juvenile Court Act was amended and that now, with certain exceptions not relevant here, juvenile court proceedings apply to minors who are under 18 years of age at the time of the alleged offense. See Pub. Act 98-61, § 5 (eff. Jan. 1, 2014) (amending 705 ILCS 405/5-120). Wallace acknowledges that, although the 2014 amendment increased the age of eligibility for juvenile adjudication, the State may still seek the discretionary transfer of a 17-year-old offender from juvenile court to criminal court. See 705 ILCS 405/5-805(3) (West 2018) (allowing the State to seek discretionary transfer under certain conditions). To determine whether discretionary transfer is appropriate, the juvenile court must consider several factors, including any previous delinquent or criminal history of the minor, the circumstances of the underlying offense, and the advantages of treatment within the juvenile justice system. *Id.*

¶ 16　　　　Wallace argues that the foregoing framework for adjudicating juveniles is incorporated into the armed habitual criminal statute. Wallace emphasizes that the armed habitual criminal statute requires that a predicate conviction be for "a forcible felony *as defined* in section 2-8" of the Criminal Code of 2012 (emphasis added) (720 ILCS 5/24-1.7(a)(1) (West 2018)), an offense "*as described*" in various sections of the Criminal Code of 2012 (emphasis added) (*id.* § 24-1.7(a)(2)), or a "violation of the Illinois Controlled Substances Act or the Cannabis Control Act that *is punishable* as a Class 3 felony or higher" (emphasis added) (*id.* § 24-1.7(a)(3)). Wallace argues that the legislature's use of the present tense terms "as defined," "as described," and "is punishable" indicates that the predicate conviction is defined by its statutory classification at the time the armed habitual criminal offense is committed rather than at the time the predicate offense was committed.

¶ 17　　　　Thus, according to Wallace, to establish the existence of a predicate conviction, it is not enough that the State proves the defendant had a prior conviction for one of the listed offenses. Rather, the State must show that at the time the prior offense was committed the defendant was 18 years old or, if he was younger than 18, that he would be transferred to criminal court had he committed the offense under the current discretionary transfer scheme. Wallace maintains that the State cannot make that showing in this case, as he had neither prior adjudications of delinquency nor felony convictions at the time he committed the armed robbery in 2008. Wallace asserts that, when viewed under the laws in place in 2019, his robbery offense would be a juvenile adjudication, rather than a criminal conviction, and, therefore, it cannot serve as a predicate conviction for the offense of armed habitual criminal. We disagree.

¶ 18　　　　When interpreting a statute, " 'the plain, obvious and rational meaning of [the] statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover.' " *Lynch v. Alworth-Stephens Co.*, 267 U.S. 364, 370 (1925) (quoting *Lynch v. Alworth-Stephens Co.*, 294 F. 190, 194 (8th Cir. 1923)).

> "The plain and obvious meaning of the language used by the Legislature is generally the safest guide to follow in construing any act. Seeking hidden meanings at variance with the language used is a perilous undertaking, which is as apt to lead to an amendment of a law by judicial construction as to arrive

at the actual thought in the legislative mind." *Illinois Publishing & Printing Co. v. Industrial Comm'n*, 299 Ill. 189, 196 (1921).

¶ 19    Wallace's reading of the armed habitual criminal statute is a "curious" and "hidden" one. Wallace is contending that, whenever the State seeks to prove a predicate conviction under the statute, it must either establish that the defendant was 18 years old at the time the prior offense was committed or, if the defendant was younger, that the State must engage in a "mini-trial" regarding the prior offense to establish that the defendant would have been transferred to criminal court, had he committed the predicate offense under the present discretionary transfer scheme. Wallace would have us hold that the legislature intended this statutory scheme even though there is no mention in the armed habitual criminal statute about establishing the age of the defendant, no mention of the Juvenile Court Act, and no mention of how a "mini-trial" regarding the prior offense would be conducted or how a jury could be expected to make the legal judgment as to whether the defendant would have been transferred to criminal court. Instead, according to Wallace, solely because the statute uses present tense terms, we must assume that the legislature intended the incorporation of the current juvenile adjudication scheme into the armed habitual criminal statute. That simply is not a reasonable reading of the statutory language.

¶ 20    As the State explains, the legislature's use of present tense phrases such as "a forcible felony as defined in Section 2-8 of this Code" means only that the trial court must determine whether the predicate conviction is for an offense that is statutorily defined as a forcible felony under the current version of the Criminal Code of 2012, that is, the Criminal Code that is in existence at the time the defendant was charged with being an armed habitual criminal. The use of the present tense does not mean that the Juvenile Court Act's discretionary transfer scheme is incorporated into the armed habitual criminal statute. See *People v. Irrelevant*, 2021 IL App (4th) 200626, ¶¶ 35-36; *People v. Hawkins*, 2024 IL App (1st) 220991-U, ¶ 21; *People v. Brown*, 2024 IL App (1st) 220827-U, ¶ 29.

¶ 21    Wallace also points to this court's decision in *People v. Stewart*, 2022 IL 126116. In *Stewart*, this court addressed whether the defendant's 2013 felony conviction for a burglary committed when he was 17 years old could serve as a qualifying offense for purposes of Class X sentencing as a recidivist under section

- 7 -

5-4.5-95(b) of the Unified Code of Corrections (730 ILCS 5/5-4.5-95(b) (West 2016)). *Stewart*, 2022 IL 126116, ¶ 1. The defendant in *Stewart* argued that, if he had committed the 2013 burglary on the date of the current offense in 2017, the result would have been a juvenile adjudication, not a felony conviction. *Id.* ¶ 7.

¶ 22    This court held that the burglary conviction was not a qualifying conviction for purposes of Class X sentencing. *Id.* ¶ 22. In so holding, this court noted that there was a split in the appellate court as to whether a trial court had to consider the defendant's age at the time of the qualifying offense. *Id.* ¶ 17. However, after this split of authority had developed, the legislature amended the Class X statute to specifically provide that the first qualifying offense must have been committed when the individual was 21 years or older. *Id.* ¶ 19 (citing Pub. Act 101-652, § 10-281 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(b)(4))). This court concluded that this amendment "clarified that the General Assembly did not intend for convictions of juveniles in adult court to be considered qualifying offenses for Class X sentencing." *Id.* ¶ 18. Accordingly, this court held that the defendant's 2013 burglary conviction was not a qualifying offense for Class X sentencing. *Id.* ¶ 22.

¶ 23    *Stewart* is distinguishable from this case. As *Stewart* explained, the legislature had amended the Class X sentencing act to include a minimum age for qualifying offenses, thus providing a clear expression of the legislature's intent. There has been no comparable amendment to the armed habitual criminal statute. Indeed, *Stewart* cuts against Wallace's position in this appeal. *Stewart* illustrates the point that "the legislature knows how to express whether the defendant's age at the time of a prior conviction affects the status of that conviction in future proceedings." See *Hawkins*, 2024 IL App (1st) 220991-U, ¶ 24. The legislature simply has not done so with respect to the armed habitual criminal statute.

¶ 24    Finally, Wallace cites two decisions from the appellate court, *People v. Collins*, 2023 IL (1st) 221328-U, and *People v. Johnson*, 2022 IL App (1st) 201034-U, both of which agreed with the argument advanced by Wallace in this appeal. *Collins* and *Johnson* are at odds with our decision in this case and are therefore overruled.

¶ 25                                  CONCLUSION

¶ 26        For the foregoing reasons, the judgment of the appellate court, which affirmed
the judgment of the circuit court, is affirmed.


¶ 27        Judgments affirmed.