2026 IL App (1st) 231884

No. 1-23-1884

Filed February 4, 2026

Third Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22400523001 |
| | ) | |
| TERRENCE CARSWELL, | ) | Honorable |
| | ) | Shawnte Raines-Welch, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE MARTIN delivered the judgment of the court, with opinion.
Justices Lampkin and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1      After a bench trial, Terrence Carswell[1] was convicted of resisting arrest (720 ILCS 5/31-1(a)(1) (West 2022)). On appeal, he argues (1) the evidence was insufficient because the State failed to prove him guilty of an underlying offense beyond a reasonable doubt and (2) the trial court erred by admitting out-of-court statements. We affirm.[2]

---

[1]The briefs spell the defendant's first name as "Terrance." The charging document spelled his name "Terrence," as did the defendant in testimony. We use the spelling the defendant provided.

[2]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 2                                I. BACKGROUND

¶ 3        Carswell was charged with criminal trespass to real property, obstructing a peace officer, and resisting arrest. Before trial, the State nol-prossed the criminal trespass count. Trial testimony produced the following account. Police officers responded to a report of a residential burglary on Scoville Avenue in Berwyn, Illinois, at 2 a.m. on November 27, 2022. The officers investigated the premises and found the intruder was no longer present. During their investigation, the officers discovered Carswell sitting on the front porch. Officer Chance Emlund asked him what he was doing. Carswell responded that he was part of a neighborhood watch and wanted to know why the officers were there. Officer Emlund asked Carswell to leave. Carswell moved to the sidewalk but began swearing at the officers. Officer Emlund suspected Carswell was intoxicated.

¶ 4        Officer Diaz[3] asked the homeowner if she knew Carswell. Over objection, the court permitted Officer Diaz to testify that the homeowner said she did not know Carswell and she wanted him off her property. Officer Diaz informed Carswell that the homeowner wanted him to leave. He responded, "F*** you!" and raised his middle finger. The officers continued to direct Carswell to leave, informing him he would be arrested for obstructing their investigation if he did not leave. Carswell remained, however, and continued stepping onto the property.

¶ 5        Eventually, the officers told Carswell he was under arrest. Carswell refused to place his hands behind his back and made his body tense. The officers tackled him to the ground. Carswell refused to allow the officers to place him in handcuffs, keeping his hands under his abdomen as he lay face down. After a five-minute struggle, the officers turned Carswell on his side and pulled his arms behind his back, placing him in handcuffs.

---

[3]The record does not contain Officer Diaz's first name.

¶ 6        Carswell testified to his version of events. He was in the vicinity and noticed police activity. He did not live at the residence but approached to ask the officers what was going on. He walked up to the first step but not onto the porch. The officers asked him to leave, and he moved to the sidewalk. Carswell denied that he stepped back onto the property. He estimated the time it took the officers to place him in handcuffs was two minutes.

¶ 7        In closing arguments, defense counsel pointed to subsection (d) of the resisting statute (*id.* § 31-1(d)), which the legislature added by enacting Public Act 101-652, § 10-215 (eff. Jan. 1, 2023), commonly known as the SAFE-T Act. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4.[4] Subsection (d) states: "A person shall not be subject to arrest for resisting arrest under this Section unless there is an underlying offense for which the person was initially subject to arrest." 720 ILCS 5/31-1(d) (West 2022). Counsel asserted that subsection (d) required the State to prove not only that the defendant resisted arrest but also to prove beyond a reasonable doubt that the defendant committed a predicate offense for which the defendant was initially subject to arrest. In this case, she contended, the State failed to prove the predicate offense of criminal trespass to real property (*id.* § 21-3) because the evidence to establish the elements of that offense relied on an inadmissible hearsay statement of the property owner.

¶ 8        The trial court rejected defense counsel's interpretation of the statute, finding that subsection (d) did not require the State to prove a predicate offense. Its plain language, the court reasoned, referred only to whether a person is subject to arrest, not to whether a person could be convicted for resisting arrest. If the legislature intended to add proof of a predicate offense as an element that must be proven to convict a person for resisting arrest, the court observed, it "could

---

[4]Subsection (d) was also included in Public Act 102-28, § 50 (eff. June 25, 2021). Thus, the amendment to section 31-1 took effect June 25, 2021, before both the conduct at issue here and the effective date of the SAFE-T Act.

have easily amended this in the bill *** but they did not." The court also pointed to the sole statement from the SAFE-T Act's sponsor regarding the amendment, which reads: "In regards to resisting arrest, the Bill requires a predicate offense to charge someone with resisting arrest. Please stop charging black folks for resisting arrest when there has not been a predicate offense." 101st Ill. Gen. Assem., House Proceedings, Jan. 13, 2021, at 7 (statements of Representative Slaughter). The court noted that the statement addressed whether persons should be charged with resisting arrest but did "not address or imply or implicate the burden of proof that's required to sustain that charge at the juncture of trial." Thus, the court would not "read into the statute something that doesn't exist."

¶ 9        The court went on to find that the officers had probable cause to arrest Carswell for obstructing their investigation and resisting arrest. The court also found Carswell guilty of both obstructing a peace officer and resisting arrest and sentenced him to 12 months of conditional discharge. Carswell filed a motion to reconsider. The court granted the motion in part, vacating the obstruction conviction upon finding that Carswell's actions did not amount to a material impediment to their investigation. The court reiterated its reading of subsection (d), observing "If the legislature wanted to impose an additional burden of proof on the State, they would have, they could have *** [i]t does not require that the resisting charge can only be sustained if there's a finding of guilty on the underlying offense." The court reduced Carswell's term of conditional discharge to six months. This appeal followed.

¶ 10                                   II. ANALYSIS

¶ 11        On appeal, Carswell raises two issues: (1) the evidence was insufficient to convict him of resisting arrest because the State failed to prove an underlying offense beyond a reasonable doubt

and (2) the trial court erred in allowing Officer Diaz to testify to the homeowner's statement over his hearsay objection.

¶ 12        Carswell argues that subsection (d) either adds an element to the offense of resisting arrest or creates an exception that the State must negate. Under either construction, he contends, the provision requires the State to prove a defendant was subject to arrest for an underlying offense to sustain a conviction for resisting arrest. The trial court interpreted subsection (d) to require only that the State show there was probable cause to arrest the defendant for an underlying offense. Carswell argues the trial court's interpretation was incorrect and, furthermore, that the evidence was insufficient to prove he had committed criminal trespass to real property. Thus, he contends that either his conviction should be reversed or we should remand this matter for a new trial.

¶ 13        This appeal requires us to interpret subsection (d). We review the interpretation of a statute *de novo*. *People v. Wallace*, 2025 IL 130173, ¶ 12. When interpreting a statute, our primary objective is to ascertain and give effect to the legislature's intent. *Id.* The most reliable indicator of that intent is the statutory language itself, given its plain and ordinary meaning, and we may not depart from that language by reading in exceptions, restrictions, or conditions. *Id.*

¶ 14        Carswell relies on *People v. Close*, 238 Ill. 2d 497 (2010), to argue that subsection (d) adds an element to the offense of resisting arrest, which the State must prove beyond a reasonable doubt. In *Close*, our supreme court considered whether the restricted driving permit (RDP) exception to the offense of driving with a revoked license (625 ILCS 5/6-303 (West 2006)) constituted an additional element of the offense or was solely a matter of defense. *Close*, 238 Ill. 2d at 508. To make that distinction:

        "[I]t is the rule in this State that where an act is made criminal, with exceptions embraced in the enacting clause creating the offense, so as to be descriptive of it, the People must

allege and prove that the defendant is not within the exceptions so as to show that the precise crime has been committed. In other words, where the exception is descriptive of the offense it must be negatived in order to charge the defendant with the offense. On the other hand, if the exception, instead of being a part of the description of the offense, merely withdraws certain acts or certain persons from the operation of the statute it need not be negatived, and its position in the act, whether in the same section or another part of the act, is of no consequence. [Citations.] Exceptions are generally mere matters of defense." (Internal quotation marks omitted.) *Id.*

The court went on to find that the RDP exception was not an element of section 6-303, as it was not descriptive of the offense and merely withdrew certain persons from the scope of the statute. *Id.* at 509.

¶ 15    Here, Carswell contends subsection (d) is an element, as it is descriptive of the offense of resisting arrest. He notes that unlike the RDP exception at issue in *Close*, which removed a class of people subject to the statute, subsection (d) is applicable to all people. Furthermore, Carswell asserts that the provision makes a conviction contingent on whether the arresting officers had a basis for making an arrest. For support, he points to Representative Slaughter's statements that "the Bill requires a predicate offense to charge someone with resisting arrest. Please stop charging black folks for resisting arrest when there has not been a predicate offense." 101st Ill. Gen. Assem., House Proceedings, Jan. 13, 2021, at 7 (statements of Representative Slaughter). Carswell argues these remarks indicate the legislature's intent to prevent a person from being charged with resisting arrest when there were no grounds to arrest the person for a predicate offense. In the alternative, Carswell contends subsection (d) provides either an exception to the offense of resisting arrest or an affirmative defense. The consequence of any of these constructions, he notes, is that the State

has the burden to prove a defendant was subject to a predicate offense to sustain a conviction for resisting arrest.

¶ 16    We find that subsection (d) does not describe the offense of resisting arrest. Nor does it provide an exception to the offense or an affirmative defense. By subsection (d)'s plain language, the provision conditions a person being "subject to arrest for resisting arrest" upon "an underlying offense for which the person was initially subject to arrest." In other words, a person is not subject to arrest for resisting arrest without first being subject to arrest for some other offense. Notably, the statute does not address whether a person can be convicted for resisting arrest. To construe subsection (d) as an element of the offense, exception, or affirmative defense would amount to adding a provision or limitation the legislature did not. "We do not rewrite statutes to add provisions or limitations the legislature did not include." *Martin v. Goodrich Corp.*, 2025 IL 130509, ¶ 28.

¶ 17    Further, the legislature has demonstrated its ability to express exceptions and affirmative defenses in clear, unambiguous language throughout the Criminal Code of 2012 (Criminal Code). For example, subsection (c) of section 31-1 (720 ILCS 5/31-1(c) (West 2024)) provides:

> "*It is an affirmative defense* to a violation of this Section if a person resists or obstructs the performance of one known by the person to be a firefighter by returning to or remaining in a dwelling, residence, building, or other structure to rescue or to attempt to rescue any person." (Emphasis added.)

Another example appears in the statute for criminal trespass to real property: "This Section *does not apply* to the following persons while serving process[.]" (Emphasis added.) *Id.* § 21-3(j). Similarly, the aggravated unlawful possession of a weapon statute prohibits carrying a weapon on one's person or vehicle "*except* when on his or her land." (Emphasis added.) *Id*. § 24-1.6(a)(1). No

comparable language appears in subsection (d). When the legislature has clearly expressed a concept elsewhere, it weighs against construing the same concept where it has not. See *Wallace*, 2025 IL 130173, ¶ 23 (observing that the legislature expressed a minimum age for qualifying offenses in the Class X sentencing statute but did not in the armed habitual criminal statute); see also *People v. Smith*, 71 Ill. 2d 95, 106 (1978) ("Whenever the legislature intends a provision to constitute an affirmative defense to a crime it has labeled it as such."). Accordingly, since the legislature did not express an exception or affirmative defense in subsection (d), we do not find that the provision operates as such.

¶ 18        Instead of an additional element, exception, or defense, subsection (d) merely makes an arrest for resisting arrest without a predicate offense unlawful. This does not give rise to an exception or defense, however, because the law does not permit a person to resist an unlawful arrest. Our supreme court has held that section 31-1 of the Criminal Code (720 ILCS 5/31-1 (West 2022)) must be read in conjunction with section 7-7 (*id.* § 7-7). *People v. Locken*, 59 Ill. 2d 459, 464 (1974). Section 7-7 provides:

> "A person is not authorized to use force to resist an arrest which he knows is being made either by a peace officer or by a private person summoned and directed by a peace officer to make the arrest, even if he believes that the arrest is unlawful and the arrest in fact is unlawful." 720 ILCS 5/7-7 (West 2022).

Accordingly, the court concluded that "resistance of even an unlawful arrest by a known officer is a violation of section 31-1." *Locken*, 59 Ill. 2d at 465; see *People v. Villarreal*, 152 Ill. 2d 368, 376-77 (1992) (following *Locken* and reiterating that resistance of even an unlawful arrest violates section 31-1); see also *People v. McIntosh*, 2020 IL App (5th) 170068, ¶ 47 ("[A]n arrestee has no right to use force to resist an arrest by a known officer, even if the officer is effectuating an unlawful

arrest."). The rationale underlying this rule is "the importance of allowing police the ability to effectively perform their duties, without interference from citizens resorting to self-help remedies. In our society, courts determine whether the police have exceeded their power, and if so, remedies are made available to those individuals harmed." *Villarreal*, 152 Ill. 2d at 380. To construe subsection (d) as an element, exception, or affirmative defense would undermine this policy and effectively permit persons to resort to self-help in contravention of section 7-7 in some circumstances.

¶ 19    The legislature has not amended section 7-7 since *Locken* was decided. "[I]n amending a statute, the legislature is presumed to have been aware of judicial decisions interpreting the statute and to have acted with this knowledge." *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 458 (1997). Thus, we presume that when enacting the SAFE-T Act, the legislature was aware of *Locken* and knew that section 31-1 was to be read in conjunction with section 7-7. Since the legislature did not amend section 7-7, resistance to an unlawful arrest remains a violation of section 31-1. For these reasons, we reject Carswell's interpretations of subsection (d).

¶ 20    Carswell also challenges the trial court's ruling permitting Officer Diaz to testify to the homeowner's statement over his hearsay objection. As Carswell frames the issue, however, this matter is dependent upon his construction of subsection (d). That is, without Officer Diaz's testimony, the State could not prove a predicate offense of criminal trespass to real property to sustain a conviction for resisting arrest. Our rejection of Carswell's interpretation of subsection (d) makes this issue moot, as a resolution cannot affect the outcome. "As a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). None of the exceptions to mootness are applicable here. See *People v. Cousins*, 2023

IL App (1st) 230234, ¶ 12 ("[T]here are three exceptions to mootness: (1) the public-interest exception; (2) the capable-of-repetition-yet-avoiding-review exception; and (3) the collateral consequences exception."). Accordingly, we do not review this issue.

¶ 21                                    III. CONCLUSION

¶ 22          Based on the foregoing, we affirm the judgment of the circuit court.

¶ 23          Affirmed.

| | |
|---|---|
| *People v. Carswell*, 2026 IL App (1st) 231884 | |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22400523001; the Hon. Shawnte Raines-Welch, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Thomas Joseph Skelton, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, Matthew Connors, and Lindsey Patton, Assistant State's Attorneys, of counsel), for the People. |