2026 IL App (2d) 240460
No. 2-24-0460
Opinion filed May 29, 2026

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

VINCENT L. DAVIS, Defendant-Appellant.

Appeal from the Circuit Court of Lake County.
Honorable James K. Booras, Judge, Presiding.
No. 20-CF-2062

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices McLaren and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant was convicted of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)) and sentenced to 14 years' imprisonment. In this direct appeal, he contends that (1) the State failed to prove him guilty of unlawful possession of a weapon by a felon, (2) he was denied a fair trial when the trial court refused to give necessity instructions to the jury, (3) he was denied his right to a fair and impartial jury due to the trial court's alleged failure to question potential jurors on the fourth *Zehr* principle (see *People v. Zehr*, 103 Ill. 2d 472 (1984)), and (4) the imposed sentence was excessive. We affirm.

¶ 2 I. BACKGROUND

¶ 3 On December 18, 2020, defendant was working at the Tobacco Plus store in Zion when he had a verbal altercation with a female customer, Lamya Allen. The argument continued outside the

store where another female customer pepper-sprayed defendant as he was backing away. Defendant drew a firearm, advanced toward Allen, and shot her in the face. Defendant then fled the area.

¶ 4    Police located defendant at an apartment in Waukegan and took him into custody. Police recovered a Smith & Wesson .38 special revolver from a safe underneath a bed in the apartment. Defendant was charged with two counts of attempted first degree murder, aggravated battery with a firearm, aggravated discharge of a firearm, and unlawful possession of a weapon by a felon (UPWF). The trial court granted defendant's motion to sever the UPWF charge. Defendant filed notice to assert the defense of necessity at trial.

¶ 5    The State filed a motion *in limine* to admit defendant's 1991 conviction for armed robbery under the name "Michael Davis" when defendant was 17 years old. The State averred that the conviction satisfied the felony predicate necessary to sustain the UPWF charge. Defendant moved to deny the State's motion, arguing that the 1991 conviction occurred when he was a juvenile and could not be used as a predicate offense for a UPWF charge. Following a hearing, the trial court granted the State's motion to admit the 1991 conviction.

¶ 6    The State filed a motion *in limine* to admit a certified copy of defendant's 1991 conviction and a copy of his birth certificate. Over defendant's objection, the trial court granted the State's motion.

¶ 7    The State filed a motion *in limine* to admit the Illinois Department of Corrections' (IDOC) master file on "Michael Davis" for purposes of identification. Defendant refused to stipulate to the identity of Davis or any other information contained in the master file. The trial court granted the State's motion as to any identifying information of defendant or the 1991 conviction. All specific underlying facts were redacted from the master file before admission.

¶ 8 During jury selection, the trial court addressed the entire jury pool, stating as follows:

> "[T]he defendant is presumed to be innocent of all the charges against him. The defendant does not have to offer any evidence, prove anything or testify. The burden of proof is upon the People of the State of Illinois, and that proof must be proof beyond a reasonable doubt."

Still addressing the entire jury pool, the trial court reiterated the following:

> "As I said, the defendant, because of the presumption of innocence, as I indicated to you the defendant is presumed innocent of all the charges against him. Does not have to offer any evidence, prove anything or testify. The burden of proof is upon the People of the State of Illinois. The defendant can just sit there and demand that the State meets their burden of proof.
>
> After the State finishes with their presentation of the evidence, then the defense may choose to *** call witnesses or present evidence. As I indicated to you, the defendant does not have to do anything. More specifically, the defendant does not have to testify. He can rely on the presumption of innocence and not take the stand. It's the defendant's choice."

¶ 9 Twelve potential jurors were seated and questioned in panels of four each. After questioning of jurors in each panel as to their ability to be fair and impartial, the trial court stated as follows:

> "As the defendant sits here today, the defendant is presumed innocent of the charge against him. The defendant does not have to offer any evidence, prove anything, or testify. The burden of proof is upon the People of the State of Illinois and that proof must be beyond a reasonable doubt. Do you understand and accept these propositions?"

The jurors indicated that they understood the propositions. The trial court used the same language when questioning each individual prospective juror during *voir dire*. The matter then proceeded to trial.

¶ 10    The State called Detective Matthew Hasenbush of the Zion Police Department to testify. Hasenbush recalled being dispatched to the Tobacco Plus store with other officers on December 18, 2020. After arriving, he was able to review surveillance video and identify defendant as a person of interest. The surveillance video from inside the Tobacco Plus store did not contain audio, but Hasenbush could observe an altercation between defendant and two female customers. Defendant is then seen retrieving a firearm from underneath the counter. Hasenbush testified that surveillance footage from outside the store showed one of the female customers lifted her shirt and exposed "what could be considered a firearm." Shortly thereafter, the second female customer pepper-sprayed defendant in the eyes. Defendant proceeded to draw a firearm and shot in her direction, hitting her in the right cheek before she fell to the ground. Hasenbush testified that she was walking away from defendant before being shot. Defendant fled eastbound toward an apartment complex. Defendant did not call 911 following the incident. Police were dispatched to the store following a 911 call from another person.

¶ 11    Hasenbush recalled locating defendant at an apartment in Waukegan on December 19, 2020. Police confirmed with defendant's sister and her boyfriend that defendant was inside the apartment. Defendant refused to leave the apartment after being given verbal commands to exit. After several hours, a tactical team was able to get defendant to exit, and he was arrested. Hasenbush collected buccal swabs from defendant's cheeks.

¶ 12    The State called Mohammad Farooqui to testify. Farooqui testified that his wife owned the Tobacco Plus store in 2020 and he managed it. In December 2020, he had two employees at the

store, one of which was defendant. He had hired him approximately two weeks before the incident. Farooqui testified that he did not keep a firearm in the store, did not ask defendant to bring a firearm into the store, and had not hired defendant as any kind of security guard. Defendant was hired as a cashier and salesman.

¶ 13    The State called Tammy Garcia, IDOC keeper of records, to testify. She identified the IDOC master file for Michael Davis. The State admitted the file into evidence over defendant's objection. The file contained identifying documents including date of birth, birth parents, birthplace, fingerprint cards, markings, tattoos, height, weight, location, parole date, and booking photographs. The State then admitted defendant's birth certificate and the certified 1991 armed robbery conviction for Michael Davis in case No. 91-CR-25380. The statement of facts cover page in the master file showed the defendant's name as "Michael Davis" with an "aka" name of "Vincent Davis." The order of sentence and commitment to IDOC lists the defendant as "Michael Davis" with an "aka Vincent Davis." Garcia acknowledged that defendant would have been 17 years old at the time of the 1991 conviction.

¶ 14    The State called Daniel August, an investigator with the Lake County State's Attorney's Office, to testify. August examined defendant on November 17, 2023, to identify defendant's scars, marks, and tattoos. August's recitation of his findings matched those described in the IDOC master file. He further observed a tattoo on defendant's right bicep with the word "Vincey."

¶ 15    The State called Joseph Beckius, a site admin technician for Viapath Technologies (Viapath), to testify. He stated that Viapath is a communications company that provides tablet and phone services for correctional facilities. Two of defendant's jail calls between November 1, 2023, and December 4, 2023, were retrieved and revealed that he discussed prior correctional facilities where he was imprisoned as well as when he was released on parole following the 1991 conviction.

¶ 16    The State called Sergeant Joseph Richardt of the Zion Police Department to testify. Richardt assisted in the search of the apartment following defendant's arrest on December 19, 2020. Therein, police discovered a black sequin Victoria's Secret bag that contained a locked safe. After locating the key, police recovered a .38-caliber Smith & Wesson revolver. DNA from the grips of the revolver was "9.89 quadrillion times more likely if it *** originated from Vincent Davis and one unknown contributor than if it originated from 2 unknown contributors."

¶ 17    At the close of the State's case, defendant moved for a directed verdict. The trial court denied the motion, and defendant called Charlotte Davis, defendant's sister, to testify. She testified that she visited defendant at the store on December 18, 2020. She recalled defendant telling her that he worked as "security" at the store. She stated that a female customer became angry after being asked by defendant for identification. The customer then left the store, and Davis went outside to smoke a cigarette. She observed that the customer was still in the area (in a car). Defense counsel then asked to approach the bench to make a proffer, and the following exchange took place:

> "[DEFENSE COUNSEL]: Judge, both her testimony now and her statement to the police officers in her interview with the Zion Police Department were, that the woman said something to the effect of, 'B***, I'm going to get my gun.' I'm not offering that for the truth of the matter asserted. What I'm offering it for is the effect on the listener in that she ultimately went back in the store and conveyed that threat to her brother who acted on that threat. So, it is not being offered for the truth but merely for its effect on the listener.
>
> THE COURT: I think—okay. Go ahead.
>
> [PROSECUTOR]: That calls for hearsay, Judge. It's inadmissible.

THE COURT: It is hearsay, but *** it might also call for them to show and involve the tape.

[DEFENSE COUNSEL]: We understand that, Judge. We have made this calculation. The issue is the admissibility of that statement, and that is the only testimony—

THE COURT: Well, how's identifying who that person is—is that the same person? Is it that person, the victim?

[DEFENSE COUNSEL]: And that may be.

THE COURT: Is that the person who got shot?

[DEFENSE COUNSEL]: Well, as an offer of proof, that is not. That is someone what [*sic*] was acting in concert with the person who was shot.

THE COURT: Well, then—

[DEFENSE COUNSEL]: Judge, I think this is the State's evidence. The specific charged conduct is that he possessed a firearm in the store. This has a firearm immediately—

THE COURT: But that doesn't go to any defense, self-defense here right now.

[DEFENSE COUNSEL]: It is necessity defense, Judge, and it absolutely does in that that threat was conveyed and that is the reason why he armed himself. This is the entirety of our necessity defense.

***

THE COURT: So, you want me to imagine and believe your necessity defense and you expect these folks to believe your necessity defense when he brought a gun to the store when he wasn't supposed to have a gun in the store, when he had a gun in spite of the fact

- 7 -

that he was convicted as a felon. And you expect these folks to do that, and you want me to muddy up the whole case by just allowing garbage in, right?

\* \* \*

Well, I will go as far as allow her after she went out she came in and she can say what she related to the defendant. That, I will allow."

¶ 18 Charlotte Davis testified that the female customer was "loud, irate, just crazy, out of control." Davis went back into the store and told defendant that she was leaving. She told defendant that the customer said she was going to get a gun. She did not call 911, and she did not witness defendant doing so. The defense rested.

¶ 19 The trial court and the parties held a jury instructions conference. Relevant here, the trial court refused to give Illinois Pattern Jury Instructions for necessity. Specifically, the trial court found as follows:

"I understand that you are advocating for your client. However, I am to deny you [a necessity instruction]. So, to surmise, the instruction \*\*\* for necessity to be given, the threat that was conveyed to your client must be immediate. He must have no other option, and the immediate threat was not given until much later. He had brought the gun in the store, constructive possession, and circumstantial evidence indicate [*sic*] that he had the \*\*\* knowledge and the power to exercise dominion and control over the gun. The testimony was, as I indicated to you, circumstantial[.] [C]ircumstantial evidence supports the finding that he brought the gun to the store. Circumstantial evidence supports the fact that he had the gun after the shooting. He took the gun to the house. And the way you presented your client, he should be commended for locking it in the safe and make [*sic*] the public safe from that gun. Yet, I don't overlook the elements of the offense that your

- 8 -

client is not, as a felon, allowed to possess a gun. He possessed it at the time, not only when the threat was given to him *** he possessed a gun constructively, circumstantial evidence supports before the threat and even after the threat. He had options. He could have locked the door. He could have called the police. Seems to me that the threat didn't mean anything to him. It wasn't a threat to him because he took the gun, and he went outside to confront the threat, confront the danger, if there was a danger. No, sir. I will not again lose perspective, and I'll deny giving the necessity instruction."

¶ 20 The jury found defendant guilty of UPWF, and the matter proceeded to posttrial proceedings. Defendant filed a motion for a new trial, arguing that (1) the State failed to prove him guilty beyond a reasonable doubt, (2) the 1991 armed robbery conviction should not have been admitted, and (3) the trial court erred in refusing jury instructions on necessity. The trial court denied the motion.

¶ 21 The trial court sentenced defendant to 14 years' imprisonment. The trial court's determination was articulated as follows:

"I have considered the Presentence Investigation report, considered the contents *** therein ***. And furthermore, I considered all the evidence that was adduced at trial. I've considered the defendant's criminal history, especially the factors in aggravation, and I gave serious consideration to any factors in mitigation. And considering *** with the utmost seriousness, I do not find any of them to be applicable. The defendant has not lived a law-abiding life. The defendant is not rehabilitatable and has an extensive criminal history. Furthermore, his acts did cause serious harm to another individual. His conduct caused or threatened serious harm as I indicated, and he did.

Furthermore, a sentence is necessary to deter others from committing the same type of offense and protect the public. The Court is limited *** by the law as to what the extent of the sentence would be. The Court is limited on the State not requesting an extended term in view of the fact that they're unable to prove the exact or equivalent charges *** that the defendant was convicted before. Furthermore, limited by, as I said, the good time credit afforded in this type case. And I'm considering all those matters in view of the Court's necessity to protect the public."

¶ 22   This appeal followed.

¶ 23                                  II. ANALYSIS

¶ 24   As noted, in this direct appeal, defendant contends that (1) the State failed to prove him guilty of UPWF, (2) he was denied a fair trial when the trial court refused to give necessity instructions to the jury, (3) he was denied his right to a fair and impartial jury due to the trial court's alleged failure to question potential jurors on the fourth *Zehr* principle, and (4) the imposed sentence was excessive. We address each contention in turn.

¶ 25   Defendant first contends that the State failed to prove him guilty of UPWF because the predicate felony conviction occurred when he was 17 years old and is no longer subject to the automatic transfer provision. He argues that the State relied on defendant's 1991 armed robbery conviction to charge the underlying offense. In 1991, an armed robbery charge was excluded from the juvenile court's jurisdiction and automatically transferred to adult criminal court, where defendant was ultimately convicted. See Ill. Rev. Stat. 1991, ch. 37, ¶ 805-4(6)(a). However, defendant argues, the legislature amended the Juvenile Court Act of 1987 in 2016, and armed robbery was no longer included in the list of offenses automatically transferred to adult criminal court. See Pub. Act 99-258 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130(1)(a)). Thus,

defendant maintains that, had he been charged with the 1991 armed robbery in 2020, his case would not be automatically transferred to adult court and no predicate offense for conviction of UPWF would exist. See 705 ILCS 405/5-130(1)(a) (West 2020).

¶ 26    To resolve defendant's contention, this court must interpret the unlawful possession of a weapon by a felon statute. At the time of defendant's arrest in 2020, the statute provided:

> "(a) It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction. This Section shall not apply if the person has been granted relief by the Director of the Department of State Police under Section 10 of the Firearm Owners Identification Card Act." 720 ILCS 5/24-1.1(a) (West 2020).

¶ 27    When interpreting a statute, our primary objective is to ascertain and give effect to the intent of the legislature. *People v. Sroga*, 2022 IL 126978, ¶ 10. The most reliable indicator of that intent is the statutory language itself, given its plain and ordinary meaning, and we may not depart from that language by reading in exceptions, restrictions, or conditions. *Id.* Our review is *de novo*. *Id.* ¶ 9.

¶ 28    After briefing concluded in this case, our supreme court issued an opinion in *People v. Wallace*, 2025 IL 130173, which we find dispositive of this issue. In *Wallace*, the defendant was found guilty of being an armed habitual criminal (AHC) where the two predicate offenses consisted of a 2008 conviction for armed robbery with a firearm and a 2015 conviction for unlawful use of a weapon by a felon. *Id.* ¶ 6. The defendant was 17 years old at the time of his 2008 conviction for armed robbery. *Id.* ¶ 8. On appeal to the First District, the defendant argued his AHC conviction

should be reversed because, due to amendments to the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2014)), the conduct leading to his 2008 conviction for armed robbery would have resulted in a juvenile adjudication if it had been committed in 2019, the year of his arrest for AHC. *Wallace*, 2025 IL 130173, ¶ 8. Therefore, the defendant's argument continued, his 2008 conviction could not serve as a predicate offense for AHC. *Id.* The First District rejected this argument, and the supreme court affirmed. *Id.* ¶ 1. The supreme court reasoned as follows:

"[The defendant] is contending that, whenever the State seeks to prove a predicate conviction under the statute, it must either establish that the defendant was 18 years old at the time the prior offense was committed or, if the defendant was younger, that the State must engage in a 'mini-trial' regarding the prior offense to establish that the defendant would have been transferred to criminal court, had he committed the predicate offense under the present discretionary transfer scheme. [The defendant] would have us hold that the legislature intended this statutory scheme even though there is no mention in the [AHC] statute about establishing the age of the defendant, no mention of the Juvenile Court Act, and no mention of how a 'mini-trial' regarding the prior offense would be conducted or how a jury could be expected to make the legal judgment as to whether the defendant would have been transferred to criminal court. Instead, according to [the defendant], solely because the statute uses present tense terms, we must assume that the legislature intended the incorporation of the current juvenile adjudication scheme into the [AHC] statute. That simply is not a reasonable reading of the statutory language.

As the State explains, the legislature's use of present tense phrases such as 'a forcible felony as defined in Section 2-8 of this Code' means only that the trial court must determine whether the predicate conviction is for an offense that is statutorily defined as a

- 12 -

forcible felony under the current version of the Criminal Code of 2012, that is, the Criminal Code that is in existence at the time the defendant was charged with [AHC]. The use of the present tense does not mean that the Juvenile Court Act's discretionary transfer scheme is incorporated into the [AHC] statute. [Citations.]" *Id.* ¶¶ 19-20.

¶ 29 The reasoning provided in *Wallace* applies directly to the result in the present case. The UPWF statute requires only that defendant "has been convicted of a felony." Defendant's 1991 armed robbery conviction was a felony conviction. Based on the plain language of the statute, defendant's 1991 conviction qualifies as the requisite prior felony conviction to affirm his present conviction for UPWF.

¶ 30 We next consider defendant's contention that he was denied a fair trial when the trial court refused to give necessity instructions to the jury. He argues that the evidence adduced at trial showed that he possessed the gun only after learning about the customer's threat. He maintains that the denial of a necessity instruction usurped the jury's role as arbiters of reasonableness and deprived him of his right to present a complete defense.

¶ 31 A defendant's constitutional rights to due process and trial by jury include the right to have the jury fully and properly instructed as to the law, including the legal principles applicable to the defendant's theory of the case. *People v. Taylor*, 2023 IL App (4th) 220381, ¶ 56. The purpose of jury instructions is to provide the jurors with the legal principles applicable to the evidence presented at trial, so that the jury may reach a correct verdict according to both the law and evidence. *People v. Bannister*, 232 Ill. 2d 52, 81 (2008).

¶ 32 "A defendant is entitled to instructions on his theory of the case when there is some foundation in the evidence for the instructions." *People v. Wicks*, 355 Ill. App. 3d 760, 763 (2005). "Only a slight amount of evidence is required to justify giving an instruction." *Id.* To be entitled

to an instruction on an affirmative defense, the defendant bears the burden to present some evidence, however slight, to support the affirmative defense. *People v. Washington*, 2012 IL 110283, ¶ 43; *People v. Macias*, 2025 IL App (1st) 230678, ¶ 17. Because jury instructions convey the governing law applicable to the evidence presented at trial and guide the jury toward a proper verdict, the record must contain at least some evidence to justify the instruction. *People v. Tapia*, 2026 IL App (2d) 240721-U, ¶ 29.

¶ 33 When the trial court, after reviewing all the evidence, determines that there is insufficient evidence to justify the giving of a jury instruction, the proper standard of review of that decision is abuse of discretion. *People v. McDonald*, 2016 IL 118882, ¶ 42.

¶ 34 Section 7-13 of the Criminal Code of 2012 (720 ILCS 5/7-13 (West 2022)) governs the affirmative defense of necessity. It provides:

> "Necessity. Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." *Id.*

To raise the defense of necessity, a defendant must present some evidence that he or she (1) was without blame in occasioning or developing the situation and (2) reasonably believed that his conduct was necessary to avoid a public or private injury greater than the injury that might reasonably have resulted from his own conduct. *Taylor*, 2023 IL App (4th) 220381, ¶ 65. The defense is viewed as involving a "choice between two admitted evils where other optional courses of action are unavailable [citations], and the conduct chosen must promote some higher value than the value of literal compliance with the law [citation]." *People v. Janik*, 127 Ill. 2d 390, 399 (1989). Necessity requires "a balancing of two evils." *Id.* at 400. It " 'applies when the threat of harm was

immediate and defendant's conduct was the sole option to avoid injury.' " *Taylor*, 2023 IL App (4th) 220381, ¶ 65 (quoting *People v. Guja*, 2016 IL App (1st) 140046, ¶ 47). Moreover, the threat of harm must be " 'specific and immediate.' " *Id.* (quoting *People v. Kite*, 153 Ill. 2d 40, 45 (1992)); see *Guja*, 2016 IL App (1st) 140046, ¶ 47 ("[t]he defense of necessity applies when the threat of harm was immediate and defendant's conduct was the sole option to avoid injury"). Indeed, such "[p]roof of a 'specific and immediate' threat of harm is a threshold requirement for the defense of necessity." *Macias*, 2025 IL App (1st) 230678, ¶ 20 (quoting *Kite*, 153 Ill. 2d at 45); *People v. Brown*, 2023 IL App (3d) 210460, ¶ 57. "A specific and immediate threat *** constitutes the very nature of a necessity defense; thus, proof of that factor is a threshold requirement for its establishment." *Kite*, 153 Ill. 2d at 45. Where no evidence is presented supporting a specific and immediate threat of harm, a necessity jury instruction should be refused. *Macias*, 2025 IL App (1st) 230678, ¶ 20.

¶ 35    The trial court did not abuse its discretion in refusing to instruct the jury on defendant's necessity defense. Defendant's assertion here that Charlotte Davis's testimony established evidence to justify the necessity instruction is misguided. She testified that when she left the store to smoke a cigarette, she saw the female customer in a car acting in an angry manner. Davis then reentered the store and told defendant that the female said she was going to get a gun. She provided no times in her testimony as to when this supposedly occurred. The surveillance video, however, shows that defendant was in possession of the gun for over 20 minutes before any threat of harm took place. No proof of a specific and immediate threat of harm was introduced to support the defense of necessity during that span of time.

¶ 36    Many other options were available to defendant such that possessing a gun was not his only option. He had sufficient time to call the police. He did not. He could have locked the store's doors.

He did not. Instead, he armed himself with the gun and walked around the store for over 20 minutes before going outside to escalate the situation into a violent altercation, after which he continued to illegally possess the gun. While none of the undisputed facts of this case support a necessity defense, we recognize that facts supporting a defense instruction on an affirmative defense need not be undisputed so long as there is some evidence in the record supporting the defense. However, in this case there is no evidence of an immediate threat. See *Kite*, 153 Ill. 2d at 45; *Tapia*, 2026 IL App (2d) 240721-U, ¶ 32.

¶ 37    Further, the trial court's decision to refuse the necessity instruction could be upheld on the mere basis that defendant did not admit that he committed the offense, as he denies that he was a convicted felon at the time of the shooting. Necessity is not available to a defendant who denies the commission of the offense. *People v. Sanchez*, 2013 IL App (2d) 120445, ¶ 84 (Birkett, J., dissenting) (citing *People v. Landwer*, 166 Ill. 2d 475, 477-95 (1995)); *People v. Gengler*, 251 Ill. App. 3d 213, 222 (1993). For all the foregoing reasons, we will not disturb the trial court's refusal to offer the necessity instruction to the jury.

¶ 38    Defendant next contends that he was denied the right to a fair and impartial jury where the trial court failed to question potential jurors on the fourth *Zehr* principle. He argues that the trial court's failure was not in accordance with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) and constitutes reversible error. Defendant acknowledges that he did not preserve this issue for review, as he did not object to the trial court's questioning during jury selection and did not include it in a posttrial motion. Nonetheless, he asks this court to review the issue under the plain error doctrine. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). Plain error occurs where the defendant shows a clear or obvious error and that either (1) the evidence is closely balanced or (2) the error is of such magnitude that the defendant is denied the right to a fair trial and remedying the error is

necessary to preserve the integrity of the judicial process. *People v. Johnson*, 208 Ill. 2d 53, 64 (2003). Here, defendant argues that the trial court's failure to admonish as to the fourth *Zehr* principle was first-prong plain error.

¶ 39    In *Zehr*, 103 Ill. 2d at 477, our supreme court held that "essential to the qualification of jurors in a criminal case is that they know" that the defendant (1) is presumed innocent, (2) is not required to offer any evidence on his own behalf, (3) must be proved guilty beyond a reasonable doubt, and (4) may decide not to testify on his own behalf and that cannot be held against him. It follows that this qualification must be established at the outset of trial because if a juror has a bias against any of these basic guarantees, an instruction given at the end of the trial will have little effect.

¶ 40    In light of *Zehr*, Rule 431(b) provides:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 41    During *voir dire*, the trial court repeatedly admonished the jury pool that "defendant is presumed to be innocent of all the charges against him" and that "defendant does not have to offer

any evidence, prove anything or testify." In each instance, the jurors indicated that they understood these principles. The record also indicates that the trial court, during *voir dire*, inquired of the jurors as to whether they would "apply the law as I will give it to you at the end of the case without regard to your personal feelings about it." The jurors indicated that they would apply the law as such. When the jurors were given instructions at the close of the trial, the trial court instructed them that "the fact that the defendant did not testify must not be considered by you in any way in arriving at your verdict." We agree with defendant that all of the *Zehr* principles are crucial, but substantial compliance with Rule 431(b) is all that is required. *Zehr*, 103 Ill. 2d at 477. The record indicates that the trial court substantially complied with Rule 431(b).

¶ 42    However, even if we were to find that the trial court's failure to explicitly articulate the fourth *Zehr* principle to the prospective jurors during *voir dire* was error, the evidence in this case is not closely balanced. As we have noted, defendant was unquestionably a convicted felon in possession of a firearm. He is seen on surveillance video retrieving a gun from underneath the store counter, putting that gun in his pants, and walking around the store with it for over 20 minutes. He fled the scene with the gun and possessed it for additional time before taking it back to his sister's apartment and putting it into a safe. As the evidence of defendant's guilt was overwhelming, he cannot show that first-prong plain error occurred.

¶ 43    Finally, defendant contends that the trial court's imposition of the maximum 14-year prison sentence was excessive because it failed to consider his potential for rehabilitation. Additionally, he argues that the trial court did not give proper consideration to mitigating circumstances in reaching its determination.

¶ 44    "[T]he trial court is in the best position to fashion a sentence that strikes an appropriate balance between the goals of protecting society and rehabilitating the defendant." *People v. Risley*,

359 Ill. App. 3d 918, 920 (2005). Thus, we may not disturb a sentence within the applicable sentencing range unless the trial court abused its discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). A sentence is an abuse of discretion only if it is at great variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *Id.* at 210. We may not substitute our judgment for that of the trial court merely because we might weigh the pertinent factors differently. *Id.* at 209.

¶ 45    In determining an appropriate sentence, relevant considerations include the nature of the crime, the protection of the public, deterrence, and punishment, as well as the defendant's rehabilitative prospects. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). The weight to be attributed to each factor in aggravation and mitigation depends upon the particular circumstances of the case. *Id.* There is a presumption that the trial court considered all relevant factors in determining a sentence, and that presumption will not be overcome without explicit evidence from the record that the trial court did not consider mitigating factors or relied on improper aggravating factors. *People v. Payne*, 294 Ill. App. 3d 254, 260 (1998).

¶ 46    The record shows that defendant's trial counsel argued at sentencing for all of the mitigating factors that he raises here on appeal. He argued that (1) defendant acted under strong provocation (730 ILCS 5/5-5-3.1(a)(3) (West 2020)); (2) defendant had substantial grounds tending to excuse or justify his criminal conduct (*id.* § 5-5-3.1(a)(4)); (3) the circumstances of an armed customer are unlikely to reoccur (*id.* § 5-5-3.1(a)(8)); (4) defendant has serious medical conditions (gout, hyperlipidemia, and Type-2 diabetes mellitus) that are under threat by lengthy incarceration (*id.* § 5-5-3.1(a)(12)); and (5) defendant is the parent of a child whose well-being will be negatively affected by his absence (*id.* § 5-5-3.1(a)(18)). The record also shows that the

trial court considered each of those factors at sentencing and at the hearing on defendant's posttrial motion where he raised the same factors.

¶ 47    In pronouncing its sentence, the trial court specifically stated that it "gave serious consideration to any factors in mitigation. And considering them *** with the utmost seriousness, I do not find any of them to be applicable." At the hearing on defendant's posttrial motion, the trial court stated in response to defense counsel's arguments on mitigating factors that it "considered everything" in imposing sentence. It went on to state:

> "Frankly, I considered all of the factors in mitigation *** and I did consider the applicable factors in mitigation. I considered the factors in aggravation, and they far exceeded any applicable factors in mitigation, and the defendant's criminal background necessitated the protection of the public and a high sentence to be imposed, ***."

As the sentence imposed was within the applicable statutory range and the record shows that the trial court did consider mitigating and aggravating factors, there is no abuse of discretion and this court will not disturb the sentence.

¶ 48                                    III. CONCLUSION

¶ 49    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 50    Affirmed.

*People v. Davis*, 2026 IL App (2d) 240460

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 20-CF-2062; the Hon. James K. Booras, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Christopher McCoy, and Sade V. Edwards, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Eric F. Rinehart, State's Attorney, of Waukegan (Patrick Delfino, Edward R. Psenicka, and David S. Friedland, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |